## McGinnis *versus* The Commonwealth.

1. Upon a writ of error in a homicide case where the prisoner is convicted of murder in the first degree, the province of the Supreme Court is to review the law as declared by the court below, and the evidence so far as to determine whether facts were testified to, which, if believed by the jury, show that the elements of murder in the first degree existed.

2. The Supreme Court will not, in such case, review the discretion of the court below in refusing to grant a new trial. The provision of the constitution of 1874 (art. V. sec. 24) that the accused, after conviction, may remove the indictment, record, and "all proceedings" to the Supreme Court for review, has not changed the law in this respect.

3. The evidence in this case considered, and held to show the existence of the elements of murder in the first degree, and to warrant conviction of that crime.

[McGinnis *v.* Commonwealth.]

4. The instructions of the court below in this case on the question of the degree of murder as affected by intoxication of the accused, approved.

5. The prisoner in this case shot his wife in the presence of her mother. The latter fled, and was followed and chased into an alley by the prisoner, who then shot her twice in vital parts, killing her instantly. The judge charged the jury, inter alia, as follows :—"Here the first attack was upon the wife, and an opportunity to kill Mrs. Read had not been embraced. If there is a deliberate and premeditated purpose to kill one, and, in the execution of such purpose, another is killed, the requisites of a murder in the first degree exist. But where there is a second and independent assault, there must be at that time, and accompanying the assault, a willful, deliberate and premeditated intent to kill some one, the person need not be designated. In this case, the evidence is as strong as to the intent to kill Mrs. Reed as to kill Mrs. McGinnis. He did not embrace the first opportunity he had to kill Mrs. Read. At that time he may have as yet formed no purpose to kill or he may have intended to kill both."

*Held,* not to be error.

January 8th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Oyer and Terminer and General Jail Delivery for the county of *Philadelphia:* Of January Term 1882, No. 410.

Indictment of John McGinnis, for the murder in the first degree of Mary Read. Plea, not guilty. Verdict, guilty of murder in the first degree, in manner and form as indicted. Motion for new trial, on the ground of after-discovered evidence, refused, and the prisoner was sentenced to be hung.

On the trial, before YERKES, J., the prisoner admitted the killing, and that the facts warranted a verdict of murder of the second degree, but not of the first degree. The only question left to the jury was that of the degree.

The facts were as follows:—On the morning of September 30th 1881, John McGinniss, who was then living apart from his wife, called at the house No. 1303 Fitzwater street, where his wife and child and his wife's mother, Mrs. Read, boarded. He saw the woman of the house, a Mrs. Harrington, and asked to see his wife. He was informed that his wife was out at work, but that Mrs. Read was upstairs. He went up and had a conversation with her, of which Mrs. Harrington overheard one or two remarks by the prisoner, one being the question " where is my child buried ?" It was in evidence that one of his two children had died a short time previously and had been buried by his wife and Mrs. Read without notifying him. He further asked Mrs. Read when his wife would be at home, as he wished a paper drawn up so that she could get her own name again. Upon being told that his wife would be home in the evening

[McGinnis *v.* Commonwealth.]

he said he would return then, and he "wished it to be understood that that would be his last visit." He then left.

The prisoner's counsel produced witnesses who testified that between two and four o'clock in the afternoon of the same day, the prisoner was intoxicated. Between four and half-past six o'clock he slept in a chair in a drinking saloon. There was some evidence as to the effect which liquor produced on him : one witness, his sister, saying that when drunk he was crazy, having once, when in that condition, poured coal-oil over his hands and set fire to them, which the witness quenched by wrapping them in her apron. About seven o'clock he left the saloon where he had slept, after drinking two glasses of soda water, and went to another saloon and took a drink of whiskey.

About eight o'clock that evening he returned to No. 1303 Fitzwater street, met Mrs. Harrington and her husband, and after an altercation with the latter, in which he remarked that if Harrington interfered with him "he'd make damn short work of him," Mrs. Read appeared at the front door and had some conversation with McGinnis, which no one heard, except that McGinnis "wanted to see his wife." His wife then stepped out on the front steps, and after a brief conversation, which was not overheard, a pistol shot was heard, the door was opened, and Mrs. McGinnis was found to be shot in the breast. [She recovered.] Mrs. Read started to run down and across the street, crying "murder," and McGinnis chased her for 200 to 250 feet, when she turned and disappeared into a small covered alley-way, McGinnis following her. Immediately thereafter two pistol shots were heard, and McGinnis was arrested as he came out of the alley. Mrs. Read's dead body was found in a yard opening on the alley, shot in two places—through her jugular vein, and through her lungs and heart.

McGinnis resisted arrest, but was overcome by two officers assisted by citizens. After his arrest, and on his way to the police station he said, among other things : "I have done it now ; I am satisfied ; I have one more ball for some one else. I am no crazy man, no Guiteau. I've hit my mark and I'm satisfied ; that's the way we do in Texas;" further, that "if he had the same opportunity he would do it over again." When confined in a cell, he sang a song. The officers who arrested him, and Mrs. Harrington testified that in their opinion the prisoner was sober when they saw him in the evening.

The judge, in his charge defined the elements of murder in the first and second degrees, and the extent to which the burden of proof rested on the commonwealth, the degree of intoxication which would prevent a deliberate intent to kill, reviewed the evidence, and submitted to the jury the question whether, under the evidence and instructions of the court, the

[McGinnis v. Commonwealth.]

prisoner was guilty of murder in the first degree or in the second degree.

The following extract from the charge was assigned for error :—" Here the first attack was upon the wife, and an opportunity to kill Mrs. Read had not been embraced. If there is a deliberate and premeditated purpose to kill one, and in the execution of such purpose another is killed, the requisites of a murder in the first degree exist. But where there is a second and independent assault, there must be, at that time and accompanying the assault, a willful, deliberate and premeditated intent to kill some one ; the person need not be designated. In this case, the evidence is as strong as to the intent to kill Mrs. Read as to kill Mrs. McGinnis. He did not embrace the first opportunity he had to kill Mrs. Read. At that time he may have as yet formed no purpose to kill, or he may have intended to kill both."

Verdict, guilty of murder in the first degree, in manner and form as indicted. The prisoner's counsel moved for a new trial, assigning for reason error in the above extract from the charge, and upon the hearing of the rule called and examined before the court a number of witnesses as to certain after-discovered facts.

The court, after argument, refused to grant a new trial, entered judgment for the commonwealth on the verdict, and thereupon sentenced the prisoner to be hung.

The prisoner's counsel took this writ of error, and filed numerous specifications of error, which, upon the argument, were consolidated and considered in the three following assignments, viz :

1. That the evidence in the cause did not warrant a conviction of murder in the first degree.

2. That the learned judge of the court below erred in charging the jury as he did in regard to the specific intent to take the life of Mrs. Read (as in the above quoted extract from the charge), and in not instructing them more fully as to the necessity of finding a distinct and independent intent to take her life, entirely unconnected with the intent as to the prisoner's wife.

3. That the learned judge of the court below erred in not granting a new trial.

*Joseph De F. Junkin* and *Hampton L. Carson*, for the plaintiff in error.—Prior to the Constitution of 1874, the Supreme Court could not review the exercise of discretion by the court below in granting or refusing a new trial. Their power of review, on a special allocatur, was confined to matters occurring at the trial, formally excepted to, noted and filed of record : Act of November 6th 1856, re-enacted in Criminal

Code, 1860, sec. 60, Purd. Dig. 389 ; Fife *v.* Commonwealth, 5 Casey 429. But we contend that this was changed by section 24 of art. V. of the Constitution of 1874, which reads : " In all cases of felonious homicide  . . .  the accused, after conviction and sentence, may remove the indictment, record, *and all proceedings*, to the Supreme Court for review." The same language is used in the Act of May 19th 1874, P. L. 219, passed in pursuance of the constitutional provision. This language has not been construed heretofore by this court. We insist that in homicide cases where the question is only one of the degree of murder, no man shall be put to death, under a verdict of murder in the first degree, until, if the prisoner so elect, the Supreme Court has " reviewed all the proceedings "—including the refusal of the court below to grant a new trial—in order to determine, as matter of fact as well as matter of law, whether all the evidence warrants a conviction of murder in the first degree. We therefore invite the attention of this court to the reasons for a new trial presented to the court below, including the after-discovered evidence, taken in connection with the evidence adduced on the trial.

The learned judge erred in that part of his charge, assigned for error, wherein, in connection with the circumstances of this case, he instructed the jury that there must be at the time of the assault " a willful, deliberate and premeditated intent to kill *some one—the person need not be designated.*" He should have instructed them that whatever may have been the prisoner's intent to kill his wife, whom he did not kill, it was necessary, before convicting him of murder in the first degree, for killing Mrs. Read, to find a distinct and independent deliberate and premeditated intent to take her life. The judge was probably misled into a wrong application of the common law doctrine, that " where A., with intent to kill C., shoots at C. and kills B," he is guilty of murder. This was not that case, but a separate and independent assault.

Under the evidence as to the extent of the prisoner's intoxication at and shortly before the killing, the verdict of murder in the first degree was not warranted. Where a man is so under the influence of liquor as to render him unable to judge of his acts or their consequences—unable to form a willful, premeditated and deliberate design to kill—he cannot be convicted of murder in the first degree. On this point, this case is ruled by Jones *v.* Commonwealth, 25 P. F. S. 403, 408, and Keenan *v.* Commonwealth, 8 Wr. 57. The words of AGNEW, J., in the former case, at. p. 410, fit this case : " It seems to us a matter of great doubt whether his frame of mind was such that he was capable of deliberation and premeditation ; it appears to have been rather the sudden impulse of a disturbed mind, led away

from reason and judgment by dwelling upon the conduct of his wife, influenced by his continued state of excitement."

*George S. Graham*, district attorney, for the Commonwealth.—The provision of the Constitution of 1874 was not intended to convert the Supreme Court, when "reviewing" the record and proceedings in a case like this, into a jury. The evidence comes here, not for the purpose of reviewing the findings of fact, but to enable the court to determine whether the elements of murder in the first degree exist so as to warrant, as matter of law, such a verdict: McManus *v.* Commonwealth, 10 Norris 66 (decided in 1879). Hypercriticism fails to show error in the charge of the court below.

Chief Justice MERCUR delivered the opinion of the court, May 25th 1883.

The fourteen specifications of error assigned, were properly argued by the counsel of the plaintiff in error under three general heads. The first is that the evidence did not warrant a conviction of murder in the first degree.

Section 74 of the Act of 31st March 1860, inter alia, declares "all murder which shall be perpetrated by means of poison or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration of, or attempt to perpetrate any arson, rape, robbery or burglary, shall be deemed murder of the first degree."

The learned judge very clearly instructed the jury as to the distinction between murder in the first degree and murder in the second degree. In the words of the statute, he charged that to convict the prisoner of murder in the first degree they must find he had committed willful, deliberate and premeditated murder, and that each of these words must be found to apply to the crime. He further said to them that the Commonwealth must satisfy them beyond a reasonable doubt of the guilt of the defendant below, "and of every element of the crime."

In cases of conviction of murder in the first degree brought before us, we are required to review the law as declared by the court below, and the evidence, so far as to determine whether the ingredients necessary to constitute murder in the first degree shall have been proved to exist. We are not, however, to assume all the functions of jurors, and pass upon the credibility of witnesses, nor on the apparent weight of the evidence. We are to ascertain whether facts were testified to, which, if believed by the jury, prove the necessary ingredients to constitute the crime of which the prisoner is convicted: Grant *v.* Commonwealth, 21 P. F. Smith 495; Brandt *v.* Same, 13 Norris 290.

Was the evidence then of such a character as to establish

[McGinnis *v.* Commonwealth.]

the necessary ingredients constituting murder in the first degree?

It is an unquestioned fact that with a deadly weapon the plaintiff in error killed Mary Read. The evidence shows he manifested angry feelings towards his wife and also towards Mrs. Read. He stood with a loaded revolver in his hand, at the door of the house of the latter, near his wife, in an excited state of mind ; Mrs. Read, alarmed at his language and conduct, started to run across the street crying, " murder." He pursued her with the pistol in his right hand ; she continued her flight and finally ran into an alley. ·He there overtook her, after having pursued her about one hundred and fifty yards, then, while she was begging for her life, he shot her twice—once in the neck, and once through the chest. She died immediately.

During the whole pursuit his purpose to take her life is sufficiently proved by his willful and deliberate shooting and killing her as soon as he overtook her. The duration of his pursuit showed premeditation and gave ample time to form a deliberate purpose. As soon as the crime was committed, and with full knowledge of the enormity thereof, he expressed his satisfaction with what he had done. On his way to the station-house soon thereafter, he said " he meant to do it ; he had done it, and would pay the penalty." He also, in a reckless spirit of bravado, declared, " I'm no crazy man ; I'm no Guiteau ; I've hit my mark and I'm satisfied."

To avoid the effect of this willful, deliberate and premeditated killing, which would establish a case of murder in the first degree, the attempt was made to lessen the grade of the crime by evidence that he was intoxicated on that day. There was evidence that he drank a large quantity of beer about mid-day and was then intoxicated : then he took a long nap, sleeping until after six o'clock. He drank very little after this. The murder was committed between eight and nine o'clock in the evening. Two witnesses, who saw him and heard him talk just previous to the commission of the crime, saw no indication that he was intoxicated. Another, who saw him a few minutes thereafter, testified, he was sober. While the whole evidence thus clearly indicated the absence of intoxication when the act was committed, yet the court very fairly left the question of his condition to the jury. It charged substantially if the prisoner was intoxicated to such a degree that he could not deliberate or form a purpose, or could not hold such a purpose in his mind so as to premeditate upon it, he was not guilty of murder in the first degree. The prisoner has no just cause of complaint against this statement of the law. The jury was clearly justified in finding that he was not so intoxicated as to be unable to form a premeditated and deliberate purpose to kill Mary Read.

[McFerran v. Filbert.]

The second proposition is without merit. The uncontradicted evidence as to the manner in which the crime was committed dispensed with the necessity of elaborating his distinct and independent intent to take the life of his victim. The fact that he may have first intended to kill his own wife, in no wise prevented his change of purpose, and the formation of a premeditated and deliberate intent to kill Mrs. Read.

The refusal of the learned judge to grant a new trial is not assignable as error: McManus v. Commonwealth, 10 Norris 66.

This case was carefully tried. It was presented to the jury in an able and lucid charge. The prisoner was deprived of no legal right. His case was well presented before us. After a careful examination of the whole record we are unable to discover any error therein.

> Judgment affirmed, and it is ordered that the record be remitted to the court of Oyer and Terminer of the county of Philadelphia for the purpose of execution.