# Commonwealth *v.* Bishop, Appellant.

*Criminal law—Murder—Suicide—Corpus delicti—Confession—Evidence—Competency.*

1. In a murder trial, where the circumstances of the killing point to homicide rather than suicide, the evidence of the corpus delicti is sufficient to justify the admission of a confession by the defendant.

2. In such case, where all the facts are consistent with a felonious killing, a confession may be received although the possibility of suicide is not excluded.

*Criminal law—Murder—Confession—Voluntary or involuntary—Conflicting evidence—Question for jury.*

3. Where a defendant charged with murder asserts that a confession offered in evidence had been extorted from him by threats, and the officials to whom the confession was made deny this, the question whether it was voluntary or involuntary is for the jury under proper instructions from the court.

4. Where a confession is preceded by the statement "knowing that it may be used for me or against," the words "for me" do not indicate that it was made in the hope of gain, and therefore involuntary.

*Criminal law—Murder—Confession — Mental condition — Evidence—Remote—Indefinite—Lay witness.*

5. Where a confession was made in 1924, under alleged conditions of mental nervousness, and the defense of insanity is not interposed, it is proper to reject the evidence of the defendant's mother as to his nervous condition on his return from the world war.

6. It is also proper to reject the evidence of a lay witness that in 1923, defendant "keeled over with a nervous attack that required the service of a physician."

7. Such evidence is too remote and indefinite, and is without weight as the testimony of a layman, and also without weight as tending to establish defendant's condition when the confession was made.

*Criminal law—Murder—Letter to wife—Husband and wife—Evidence.*

8. A letter addressed to his wife by a man charged with murder, but never received or seen by the wife is admissible in evidence

against defendant, and such admission does not contravene the rule
that one spouse cannot furnish evidence against another.

*Criminal law—Murder—Trial—Stenographer's notes—Swearing
stenographer—Harmless error.*

9. After a conviction of murder, objection will not be heard
that the stenographer was not sworn, where there is nothing shown
to that effect, and no charge is made that his duties were not per-
formed accurately and with fidelity.

10. In such case, if, in fact, the stenographer was not sworn, the
error is harmless, as the case was tried by the jury on evidence
sworn in open court, and their verdict could not have been influ-
enced by the fact that the stenographer was not sworn.

*Criminal law—Murder—Practice, O. & T.—Sentence—Request
for stenographer's notes—Abuse of discretion.*

11. Where sentence in a murder case has been delayed for six
months and after a rule for a new trial has been discharged, and
the prisoner called for sentence, the trial judge cannot be charged
with abuse of discretion in declining to delay the sentence until
the defendant's request, then made for the first time, for a copy of
the stenographer's notes, is complied with; and especially is this
so where the request was complied with in due time.

*Criminal law—Murder—Evidence—Charge by prisoner against
an innocent person.*

12. A charge made by a prisoner indicted for murder, that an
innocent person committed the crime, is always regarded as a
circumstance indicative of guilt, inasmuch as it is an effort to
divert suspicion.

*Criminal law—Murder—Robbery—Degree—Charge — Function
of jury—Indictment—Count—Practice, O. & T.*

13. Where, in a murder trial, defendant is charged with killing
committed in an attempt to perpetrate robbery, the judge performs
his full duty if he instructs the jury as to the nature of the crime
under the statute, and leaves to them the right to fix the degree.

14. In such case, it is not necessary for the trial judge to reiter-
ate to the jury, in every part of the charge, their right to fix the
degree.

15. Where an indictment charges murder and in a second count
voluntary manslaughter, it is not error for the court to charge
that the second count was surplusage.

16. Where there is no evidence tending to reduce the crime to
voluntary manslaughter, it is not necessary for the trial judge to
define that term.

*Criminal law—Murder—Recommendation of leniency by jury—Act 1925.*

17. Where a verdict of conviction of murder in open court is ratified by the poll of the jury, and entered of record, a paper found by the clerk signed by the jurymen recommending leniency, is not part of the verdict, and the validity of the verdict is not affected thereby.

18. Prior to the Act of May 14, 1925, P. L. 749, neither court nor jury had any discretion in fixing the penalty for first degree murder.

*Appeals—Criminal law — Murder — First degree — Evidence—Charge—Excerpts.*

19. On an appeal from a conviction of murder of the first degree, the appellate court must assume the truth of the evidence adverse to defendant, the credibility of which was for the jury to pass upon.

20. Excerpts from the charge will not be sustained as erroneous, where they are accurate when taken in connection with the context.

Argued November 23, 1925.  Appeal, No. 336, Jan. T., 1925, by defendant, from judgment of O. & T., Lebanon Co., March T., 1924, No. 3, on verdict of guilty of murder of the first degree, in case of Commonwealth v. William J. Bishop.  Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.  Affirmed.

Indictment for murder.  Before HENRY, P. J.

The opinion of the Supreme Court states the facts.

Verdict of murder of the first degree on which sentence was passed.  Defendant appealed.

*Errors assigned* were various rulings and instructions, quoting record.

*Paul G. Adams,* for appellant, cited: As to the request for leniency: Com. v. Nicely, 130 Pa. 261; Kramer v. Kister, 187 Pa. 227.

As to the stenographer not being sworn: Dougherty v. Com., 69 Pa. 286; McCue v. Com., 78 Pa. 185; Prine v. Com., 18 Pa. 103.

As to the court invading the province of the jury: McMahon v. Transit & Light Co., 280 Pa. 199; Com. v. Frucci, 216 Pa. 84; Com. v. Divomte, 262 Pa. 504.

As to defining voluntary manslaughter: Com. v. Gable, 7 S. & R. 423; Potter v. United States, 155 U. S. 438.

As to the evidence of defendant's nervous condition: Gould v. U. S., 65 L. Ed. 647.

As to admitting certain letters of defendant in evidence: Com. v. Fisher, 221 Pa. 538.

As to confession of the defendant: Bram v. U. S., 168 U. S. 532.

*A. H. Ehrgood,* District Attorney, for appellee.—A writing prepared in the jury room and presented to the court forms no part of the record: Com. v. Houghton, 22 Pa. Superior Ct. 52; Com. v. Flaherty, 25 Pa. Superior Ct. 490; Henning v. Keiper, 37 Pa. Superior Ct. 488; Com. v. Breyessee, 16 Pa. 451; Kramer v. Kister, 187 Pa. 227; Rottmund v. R. R., 225 Pa. 410.

The rule is well settled in Pennsylvania that a count for manslaughter may be joined with one for murder, but that such procedure is not necessary: Kane v. Com., 109 Pa. 541; Com. v. Payne, 242 Pa. 394.

In charging the jury in a homicide case, the court may express an opinion that there is nothing in the case to reduce the crime to manslaughter: McClain v. Com., 110 Pa. 263.

The confession was properly admitted: Com. v. Wilson, 186 Pa. 1; Fife v. Com., 29 Pa. 429; Com. v. Johnson, 217 Pa. 77; Com. v. Clark, 130 Pa. 641.

OPINION BY MR. JUSTICE WALLING, January 4, 1926:

This appeal by William J. Bishop, the defendant, is from sentence on conviction of murder of the first degree; and, while the case rests very largely upon his own extra judicial statements and confessions, the record discloses no adequate ground for reversal. Shortly after

six o'clock on the evening of December 29, 1923, Enos Robb, the deceased, left his home in Palmyra, Lebanon County, and walked along the street about five hundred and forty feet when he received a bullet wound in the forehead, which caused his death.  So far as known, the deceased had with him no firearm and none was found in the vicinity of the body, which, with the report of three shots, pointed to homicide rather than suicide, and afforded ample evidence of the corpus delicti to justify the admission of a confession.  In such case where all the facts are consistent with a felonious killing a confession may be received although the possibility of suicide is not excluded.  In Com. v. Gardner, 282 Pa. 458, 464, Mr. Justice KEPHART, for the court, says: "It sometimes happens the circumstances attending the act may be consistent with crime, suicide or accident.  In such cases, the corpus delicti is proven where the circumstances attending the death are consistent with crime, though they may also be consistent with accident (Com. v. Johnson, 162 Pa. 63), or suicide (Zell v. Com., 94 Pa. 258), and it is not necessary to show by affirmative proof that the latter two possibilities do not exist before evidence as to who did the act is admitted: Com. v. Puglise [276 Pa. 235], 238.  It is not enough, however, to show a death, but death must be consistent with a criminal act before a conviction will be sustained"; and Mr. Justice SADLER, for the court, in Com. v. Puglise, supra, pp. 238, 239, says: "The true rule in such cases is believed to be this: When the Commonwealth has given sufficient evidence of the corpus delicti to entitle the case to go to the jury, it is competent to show a confession made by the prisoner connecting him with the crime.  Under such circumstances, the jury should first pass upon the sufficiency of the evidence of the corpus delicti.  If it satisfies them beyond a reasonable doubt that crime has been committed, then they are at liberty to give the confession such weight as it is entitled to, taking into view the circumstances attending it, and the extent to which

it has been corroborated." See also Gray v. Com., 101 Pa. 380; 7 R. C. L., p. 777.

Defendant's brother, Benjamin Bishop, as a witness for the Commonwealth, testified that, on the afternoon of the day of the shooting, defendant told him he was in need of money and was going out that night to get it,—kill if he had to,—and two days later defendant confidentially admitted to him that he killed Robb. A month thereafter, on February 3, 1924, defendant gave the officers a signed statement setting forth that he saw Jimmie Miller shoot Robb; on the strength of which Miller was confined in jail for some days. Eight days later defendant gave the officers a second signed statement in which he admitted shooting Robb, but asserted he did it under the belief that it was another party and that the latter was about to attack him. Then, on the following day (February 12, 1924), defendant gave the officers a third statement in detail, which he wrote with his own hand and wherein he stated, inter alia, that he was badly in need of money and took his gun from his mother's house at Hershey, told his brother he was going out that night to get some money, no matter where, that he went to Palmyra some four miles on the street car, and states that while walking on the street: "I saw a man coming tuward me an these thoughts came back to my mind hold him up maybe he has some money I walked tuward him an when I got just about eaven I said stick em up then he jerked his hands out of his pockets then I thought he was going to shoot then I fired and that is how this awful thing happened then I run I didnet look to see who it was or if he had money." He also says in this statement that he told his brother Ben the next day he thought he killed a man the previous night and further that he was drunk or he would not have done it. Defendant wrote his mother the same day stating, inter alia, that had he not been drunk he would not have done this awful thing. He wrote his wife at the same time

saying he was in jail for causing a man's death, and added, "but when I shot him I shot in self defense."

At the trial defendant took the stand and denied his guilt, also stated that the confession was extorted from him by threats and putting him in fear. However, as the witnesses for the Commonwealth had testified that the confession was voluntary it had rightly been received in evidence and the trial judge properly instructed the jury to decide whether it was voluntary or involuntary and if the former to consider it, but, if the latter, to disregard it; which was all the defendant had a right to ask: Com. v. Epps, 193 Pa. 512; Com. v. Shew, 190 Pa. 23; Com. v. Wilson, 186 Pa. 1.

The heading to the statement of February 12th, after asserting its voluntary character, says, "and knowing that it may be used for me or against." It is contended for defendant that the words "for me" indicate it was made in the hope of gain and therefore was not voluntary. This contention is not sound, although at one time it seems to have been a mooted question in the British courts; so far as called to our attention, it has not been recognized in this country, certainly not in Pennsylvania (see Com. v. Spardute, 278 Pa. 37), and was disallowed in New Jersey: Roesel v. The State, 62 N. J. L. 216, 41 Atlantic 408.

The defense of insanity was not interposed; but, for the purpose of showing defendant was in such a nervous condition when he made the confession (February 12, 1924) as to be easily misled, his mother was asked what change she observed in his nervous condition on his return from the world war. This was properly excluded as being too remote. For a like purpose defendant offered to prove by a lay witness that in the fall of 1923, defendant "keeled over with a nervous attack that required the service of a physician." This was properly rejected as too indefinite, as there was no offer to show that the attack resulted from or was caused by any permanent nerve impairment; furthermore, a lay witness

would not know whether defendant's lapse resulted from a nervous attack or from some other cause, and it did not tend to establish his condition when the confession was made.

The letter to the mother was properly received in evidence as it was voluntarily turned over to the Commonwealth by defendant's brother. The letter to the wife was also competent as defendant gave it in an open envelope to an officer, who kept it and sent the wife a copy. As she never had the letter and never gave it to any one it does not fall within the rule (see Com. v. Fisher, 221 Pa. 538) that one spouse cannot furnish evidence against the other. Cyc., vol. 40, p. 2358, correctly states that, "A letter from one spouse to the other may be produced in evidence by a third person into whose possession it has come, unless such person obtained it through the agency or connivance of the spouse to whom it was addressed; and a third person to whom a letter is voluntarily exposed by the writer may testify as to its contents, although it is addressed to the spouse of the writer"; and see State v. Hoyt, 47 Conn. 518.

An assistant stenographer took the testimony, charge, etc., during the trial of this case and joined with the trial judge in certifying the record. No suggestion is made that his duties were not performed accurately and with fidelity, but it is urged that he was not sworn as the statutes require. The presumption is that the stenographer had complied with the law in that respect and the contrary was not shown. Moreover, the jury tried the case on the evidence given in open court and their verdict could not have been influenced in the slightest degree by the fact as to whether the stenographer was or was not sworn; neither can this appeal, as the accuracy of the record is unchallenged. As no harm resulted to the defendant and as he made no request that the stenographer be sworn, we conclude that such question cannot be raised after a trial and verdict upon the merits. If error it was harmless for which a judgment will not be

reversed: Com. v. Divomte, 262 Pa. 504. Defendant was
sentenced at the end of six months after verdict, mean-
time a motion and reasons for new trial and affidavits in
support thereof, were filed and argument thereon had be-
fore the court and duly considered and when the rule
was discharged and defendant called for sentence he,
through his counsel, for the first time requested a copy
of the stenographer's notes. The request was complied
with in due time but the trial court did not abuse its
discretion in declining to delay the proceedings until
compliance with such request. There might have been
some reason for delay had the request been made prior
to the argument of the rule for new trial.

We have carefully examined all the reasons urged for
a new trial, including the so-called after-discovered evi-
dence, but are not persuaded that the discharge of the
rule therefor constituted an abuse of discretion. The
corpus delicti, being sufficiently established, the credi-
bility of defendant's admissions and confessions was for
the jury. The circumstances in corroboration thereof
were not strong, but included the fact that defendant
was in need of money, that he owned a revolver of the
same caliber (.38) as the one which killed Robb, that
he was in the vicinity at the time in question, that he
gave conflicting accounts of the transaction and that he
directly charged an innocent third party with the crime.
The latter, as an effort to divert suspicion, is always re-
garded as a circumstance indicative of guilt: Com. v.
Spardute, supra; Com. v. Johnson, supra. The evidence
favorable to defendant,—including that tending to show
he did not have his gun with him on the night in ques-
tion, also that tending to support the claim of an alibi,
although very weak,—was submitted to the jury.

The trial judge, in charging the jury, quoted the statute
constituting the first degree murder committed in an
attempt to perpetrate robbery, and said the defendant
would be guilty of that degree of crime if the jury found

he killed the deceased while attempting to rob him. He also quoted the statute imposing upon the jury the duty of fixing the degree of murder in case of conviction and said further: "The jury always has to determine in murder, whether of the first degree, second, or voluntary manslaughter; that is included in the count for murder." So the contention that the trial judge took from the jury the right to fix the degree, is untenable. While he explained the nature of the crime, under the statute, as was his duty, he left with the jury the right to fix the degree, and that is what the law requires. It is not necessary for the trial judge to reiterate to the jury in every part of the charge their right to fix the degree: Com. v. Spardute, supra.

The indictment charged the defendant with murder and in a second count with voluntary manslaughter. The trial judge stated to the jury in effect that the second count was surplusage as under the first count the defendant might be convicted of either degree of murder or of voluntary manslaughter, which was entirely accurate: Com. v. Gable, 7 S. & R. 423. There is no just ground for criticism of the trial judge's definition of voluntary manslaughter; furthermore, as there was no evidence tending to reduce the crime to that offense it was not necessary for the trial judge to even define it: Com. v. Spardute, supra; Com. v. Lessner, 274 Pa. 108, 113.

Error is assigned to numerous excerpts taken from the charge, mostly as to comments upon the facts, but all are accurate when taken, as they must be, in connection with the context: Com. v. Prescott, 284 Pa. 255; Com. v. Troy, 274 Pa. 265; Com. v. Blakeley, 274 Pa. 100; Com. v. Russogulo, 263 Pa. 93. The trial judge's right and in some cases his duty to comment upon the facts is well recognized. The instructions in the instant case were comprehensive and gave the defendant every right to which he was entitled, and nothing appears to justify

the complaint that the trial judge exhibited hostility toward the defendant or his counsel. The instant case bears no analogy to Com. v. Stallone, 281 Pa. 41.

The verdict as returned in open court, ratified by a poll of the jury and entered of record, convicted defendant of murder of the first degree, but the clerk found among the papers returned by the jury a writing as follows: "To Hon. Judge of Leb. Co. Owing to insufficient evidence in this case as held by several members of our jury as to cause a doubt in their minds, we have unanimously agreed to beg The Honorable Court of Leb. Co. for leniency in sentencing Wm. Bishop in our verdict. J. S. Ulrich, Foreman." The verdict is that announced in open court and recorded as such: Dornick v. Reichenback, 10 S. & R. 84; Com. v. Breyessee, 160 Pa. 451; Com. v. Micuso, 273 Pa. 474; Com. v. Mills and Adams, 3 Pa. Superior Ct. 161; Henning v. Keiper, 37 Pa. Superior Ct. 488. The paper above quoted formed no part of the verdict, nor was the latter's validity affected thereby. As this was prior to the Act of May 14, 1925, P. L. 749, neither the court nor jury had any discretion in fixing the penalty for first degree murder. The recommendation to leniency, however, can be referred to the Pardon Board.

As is our duty under the statute, we have reviewed both the law and the evidence to determine whether the ingredients necessary to constitute murder in the first degree were proved to exist and find they were. In such review we must assume the truth of the evidence adverse to defendant, the credibility of which was for the jury to pass upon. Mr. Justice SIMPSON, for the court, in Com. v. Diaco, 268 Pa. 305, 306, says: "Section 2 of the Act of February 15, 1870, P. L. 15, requires us to carefully consider this matter; but in so doing we must accept as true all the evidence in the case from which the jury might have found the murder was wilful, deliberate and premeditated: McGinnis v. Com., 102 Pa. 66; Com. v.

Morrison, 193 Pa. 613"; and see Com. v. Daynarowicz, 275 Pa. 235.

The assignments of error are overruled, the judgment is affirmed and the record is ordered remitted for the purpose of execution.