Commonwealth *v.* Chuing, Appellant.

446

Argued September 29, 1942.

Before Keller, P. J., Cunningham, Baldrige, Rhodes, Hirt and Kenworthey, JJ.

*William T. Connor,* with him *John R. K. Scott,* for appellant.

*Ephraim Lipchutz,* Assistant District Attorney, with him *John H. Maurer,* District Attorney, for appellee.

OPINION BY KELLER, P. J., November 11, 1942:

The indictment in this case charged that the defendant, Eng Chuing, on April 17, 1942, (1) unlawfully and feloniously had in his possession and under his control a quantity of opium, and (2) unlawfully and feloniously did sell, deliver, distribute, traffic in and give away a quantity of opium, (Act of July 11, 1917, P. L. 758, as amended, *inter alia,* by Act of June 22, 1931, P. L. 655). He was tried together with one Tony Narcise, who was separately indicted for the unlawful and felonious possession of opium, and a general verdict of guilty was returned against each of them. Eng Chuing alone appealed.

The facts in evidence were fairly and concisely stated by the learned trial judge in his opinion refusing Eng Chuing a new trial:

"On April 17, 1942, at 9 p.m. two city detectives of the police force of the Department of Public Safety of Philadelphia, attached to the Narcotic Squad, were parked in an automobile across the street from 712 South 11th Street, Philadelphia, watching that building wherein a Chinese laundry was conducted. The defendant Eng Chuing came to the door of 712 South 11th Street, looked up and down the street, went back into the store, put out the electric light in front of the laundry and closed the door. About ten minutes later when it was dark, the other defendant Narcise walked south on the west side of 11th Street and stopped at the door of 712 South 11th Street. He knocked on the door and was admitted. In about two minutes, Narcise came out of the laundry and walked toward his LaSalle automobile parked at the southeast corner of 11th and Bainbridge Streets, where he was placed under arrest by the detectives from the Narcotic Squad. He had in

his possession two packets of smoking opium. The city chemists so found it to be and so testified. About 11:30 the same evening, the city detectives returned to the Chinese laundry and arrested Eng Chuing whom one of the detectives had known for approximately ten years and who was found by a police surgeon to be an opium addict. The laundry was searched but no drugs were found therein. The detectives questioned the defendant Chuing who stated that Narcise had come to the laundry the night before and asked him to get him a couple of packages of hop, the name for smoking opium. Chuing stated to the police that he procured the opium after having advised Narcise to return for it on the next night. Chuing stated to the police that he then sold the two packets of opium to Narcise for $6; that Narcise gave him a $10 bill and got the two packets and $4 [four $1 bills] in change. A $10 bill with other money was found in the possession of the defendant Chuing who admitted that he had gotten the $10 bill from Narcise, and $4 [four $1 bills] were found in the possession of Narcise at the time of his arrest. At the City Hall, Chuing identified Narcise as the man to whom he had sold the opium."

No evidence was introduced on Eng Chuing's behalf, but a point for binding instructions for his acquittal was presented, which was refused, as was his motion for a new trial.

The main point relied on by appellant's counsel in his argument was that the admission of the testimony of the police officers as to the admission by Chuing (or Eng, the Chinese *family* name is placed first) of his sale of the opium to Narcise, violated the rule that such a confession cannot be received in evidence until after the corpus delicti has been proved. But counsel misconstrues the meaning of the term, 'corpus delicti.' It does not mean, as counsel argues, that the Commonwealth must establish all the elements of the charge or

offense for which the accused is indicted, before evidence of his confession can be received. This is pointed out by Professor Wigmore in his treatise on Evidence (3 Ed.) Vol. 7, sec. 2072, as follows—omitting illustrative cases and notes:

"Definition of 'Corpus Delicti'. The meaning of the phrase *'corpus delicti'* has been the subject of much loose judicial comment, and an apparent sanction has often been given to an unjustifiably broad meaning. It is clear that an analysis of every crime, with reference to this element of it, reveals three component parts, *first,* the *occurrence* of the specific kind of injury or loss (as, in homicide, a person deceased; in arson, a house burnt; in larceny, property missing) ; *secondly,* somebody's criminality (in contrast, e. g. to accident) as the source of the loss,—these two together involving the commission of a crime by *somebody;* and, *thirdly,* the accused's *identity* as the doer of this crime.

"(1) Now, the term 'corpus delicti' seems in its orthodox sense to signify merely, the first of these elements, namely, the *fact of the specific loss or injury sustained.* This, too, is 'a priori' the more natural meaning; for the contrast between the first and the other elements is what is emphasized by the rule; i. e. it warns us to be cautious in convicting, since it may subsequently appear that no one has sustained any loss at all; for example, a man has disappeared, but perhaps he may later reappear alive. To find that he is in truth dead, yet not by criminal violence—i. e. to find the second element lacking, is not the discovery against which the rule is designed to warn and protect us.

"(2) But by most judges the term is made to include the second element also, i. e. *somebody's criminality.* This broader form makes the rule much more difficult for the jury to apply amid a complex mass of evidence, and tends to reduce the rule to a juggling-formula.

"(3) A third view, indeed, too absurd to be argued

450

with, has occasionally been advanced, at least by counsel, namely, that the 'corpus delicti' includes the third element also, i. e. the *accused's identity* or agency as the criminal. By this view, the term 'corpus delicti' would be synonymous with the whole of the charge, and the rule would require that the whole be evidenced in all three elements independently of the confession, which would be absurd."

The Supreme Court of this Commonwealth, in defining *'corpus delicti'* has included the first two elements mentioned by Dr. Wigmore, but not the third. It includes (1) the occurrence of the specific *kind* of injury charged, and (2) *somebody's* criminality as the source of the injury. But it has not extended it so as to include the third element, i. e. the *accused's* agency as the *doer* of the crime. While proof of that—that is, his guilt—is an essential requisite in order to convict the accused, it does not form part of the 'corpus delicti'.

The rule in force in this Commonwealth was well stated by Mr. Justice KEPHART in *Com. v. Gardner,* 282 Pa. 458, 463, 128 A. 87: "To avoid the injustice of a conviction where no crime exists, the law has adopted a rule of caution which holds that the corpus delicti must be proven before a conviction can stand. This is emphasized where the state's case depends on a confession by defendant. The fact that *a crime has been committed by someone* must be shown before the confession will be received ...... The person for whose death a prosecution is instituted may be alive, so evidence that he or she is in fact dead is imperative. As death may have resulted from a cause other than a felonious act, there must be evidence that it occurred under circumstances *which point to the commission of a crime. In this manner the corpus delicti is shown.* In some states the term corpus delicti includes only the first of the above elements, namely, an injury or loss. But in this

and most of the states it covers in addition criminal agency causing the injury or loss." (Italics added).

In *Com. v. Puglise*, 276 Pa. 235, 239, 120 A. 401, Mr. Justice SADLER stated that if the evidence of the corpus delicti "satisfies them [the jury] beyond a reasonable doubt that *a crime has been committed*, then they are at liberty to give the confession such weight as it is entitled to, taking into view the circumstances attending it, and the extent to which it has been corroborated" (Italics added).

To like effect, see *Com. v. Bishop*, 285 Pa. 49, 53, 131 A. 657; *Com. v. Marshall*, 287 Pa. 512, 519, 135 A. 301, MOSCHZISKER, C.J.—("Was there evidence sufficient, aside from defendant's confessions, to show that a crime has been committed?"); *Com. v. Coontz*, 288 Pa. 74, 79, 135 A. 538, SCHAFFER, J.—("When testimony adduced points to an unlawful killing, although it may indicate as well accident or suicide, statements of one accused of the homicide then become admissible to show that there was an unlawful slaying and the accused's connection therewith"). The latest pronouncement of the Supreme Court is found in *Com. v. Turza*, 340 Pa. 128, 133, 134, 16 A. 2d 401, where Mr. Justice PATTERSON, speaking for the Court, said: "The rule, attempted to be invoked by appellant, that an extrajudicial admission or confession of one accused of crime cannot be received in evidence unless and until the corpus delicti of the crime has first been established by independent proof, and that failure to comply with this prerequisite will exclude the admission or confession, is a familiar one. But, this does not mean, as appellant contends, that the Commonwealth must preliminarily and independently establish all the elements of the *charge*, i. e., (1) the occurrence of an injury or loss—in homicide, a person deceased, (2) somebody's criminality as the source of the injury or loss—in homicide that the death was caused by a beating, gunshot or other circum-

stances indicating a felonious act, and (3) the accused's identity as the responsible party or one of the responsible parties. 'By this view, the term "corpus delicti" would be synonymous with the whole of the charge, and the rule would require that the whole be evidenced in all three elements independently of the confession, which would be absurd.' Wigmore on Evidence (3d ed.), section 2072. The grounds on which the rule rests are the hasty and unguarded character which is often attached to confessions and admissions and the consequent danger of a conviction where no crime has in fact been committed; consistent therewith, all that the rule requires is that the first two of the above-mentioned three elements be independently established. Thus, whenever, as here, the Commonwealth, in a homicide case, has established that the person for whose death the prosecution was instituted is in fact dead and that the death occurred under circumstances indicating that it was criminally caused *by someone,* the rule is satisfied and admissions or confessions of the accused may then always be received as proof of the identity of the guilty agent."

Consistent therewith, see *Com. v. Amato,* 148 Pa. Superior Ct. 151, 153, 154, 24 A. 2d 681; 23 C. J. S. 181, sec. 916a[1]; 14 Am. Jur. 758, sec. 6.[2]—cited by appellant; 1 Bouvier's Law Dictionary 686 (Rawle's 3d Revision): "In cases of felonious homicide, the *corpus delicti* consists of two fundamental and neces-

---

[1] "Corpus delicti means that a crime has actually been committed, and is composed of two elements, the fact or result forming the basis of the charge and the existence of a criminal agency as the cause thereof. Ordinarily the accused's connection with the crime is not an element thereof."

[2] "Generally speaking, the term 'corpus delicti' means, when applied to any particular offense, that the specific crime charged has actually been committed by someone. It is made up of two elements: (1) That a certain result has been produced, for example, a man has died or a building has been burned; and (2)

sary facts: first, the death; and secondly, the existence of a criminal agency as its cause ...... A like analysis would apply in the case of any other crime."

The corpus delicti in this case was the unlawful possession and sale of opium. The connection of Eng Chuing with that unlawful possession and sale, although a necessary element to be proved before he could be convicted of the offenses charged in the indictment, was not an element or constituent of the *corpus delicti*.

Nearly all of the testimony recited in the opinion of the court below had been admitted before any evidence was received of his confession. The prior testimony was amply sufficient to prove the corpus delicti, as above stated, viz., the unlawful possession of opium by Narcise, and, flowing from it, the unlawful sale or delivery of, or traffic in, that opium by *someone*. The confession, corroborated by additional circumstances, was sufficient, if believed, to establish that Narcise had bought and received the opium from Eng Chuing and warranted the latter's conviction on both counts.

Appellant complains of the trial judge's charge on the subject of reasonable doubt, in instructing the jury, *inter alia* (the part objected to being italicized): "If you have a reasonable doubt as to the guilt of a defendant, *after the Commonwealth has presented its case,* it is your duty to acquit." This occurred at the opening of the charge. The defendant, Eng Chuing, had presented no testimony; still, if Narcise, who was tried together with him, had given any evidence favorable to this appellant, which might create a reasonable doubt of his guilt in the minds of the jury, he was entitled to the benefit of it.

---

that some person is criminally responsible for the act. It has been said that the corpus delicti consists of the facts that a crime has been committed *and that the defendant was implicated in the crime. This definition, however, is inaccurate,* since if true, all that would be necessary to convict of a crime would be to prove the corpus delicti." (Italics added).

454

The trial judge later on, after referring to Narcise's testimony that he had no opium that night and had thrown none away, told the jury that if they believed his story, Eng Chuing must be acquitted, "because he is charged with selling drugs to Narcise; and if Narcise did not have them, then Chuing cannot be charged with selling him any. ...... You must be satisfied beyond a reasonable doubt that the Commonwealth has met its burden, has proven beyond a reasonable doubt that Narcise is guilty of the offense set forth in this indictment before you can consider the action against the other defendant." When asked by counsel for defendant to amplify further, the court told the jury: "If the jury's mind is not convinced beyond a reasonable doubt as to the conclusion of guilt of defendant Eng Chuing as against any other conclusion their verdict must be not guilty."

We think these instructions cleared up any possible harm flowing from the prior use of the phrase 'after the Commonwealth has presented its case.' Having been given in response to the request of the appellant's counsel for further instructions, it represented the final and corrected instruction of the court, and we are satisfied no harm resulted to the defendant from the inadvertent statement at the opening of the charge.

We have considered the other matters embraced in the statement of questions involved—which limits the scope of our review—and find no reversible error in any of them. It was not improper to admit in evidence the testimony of the police surgeon, Dr. Antrim, that he had examined Eng Chuing the night of his arrest and found indications that he was an opium smoker, from the fact that the inner side of his teeth were all black, that the back of his tongue was a very brown color and that his clothes smelt of opium; and that on questioning him, the defendant told him he had been smoking opium for about twelve years. It was not evi-

dence of a separate and unconnected crime, but was material in throwing light on his possession of the drug and the truth and credibility of his confession. See *Udderzook v. Com.*, 76 Pa. 340, 353 and *Com. v. Amato*, 148 Pa. Superior Ct. 151, 153, 24 A. 2d 681.

The assignments of error are overruled and the judgment is affirmed; and it is ordered that the defendant, if released on bail, appear in the court below at such time as he may be there called and that he be committed by that court until he has compiled with his sentence or any part of it which had not been performed at the time his appeal was made a supersedeas.