Commonwealth *v.* Bufalini et ux., Appellants.

Argued September 14, 1962.   Before RHODES, P. J.,
ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and
FLOOD, JJ.

*James B. Ceris,* with him *Samuel L. Goldstein,* for appellants.

*Richard P. Steward,* District Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, J., December 12, 1962:

This is an appeal from the judgment of sentence of the Court of Quarter Sessions of Beaver County by Dante Bufalini and Elizabeth Bufalini, his wife, the defendants-appellants; and from the denial of their motions in arrest of judgment and for a new trial. They had been jointly indicted on two counts under the Act of June 24, 1939, P. L. 872, §601, 18 PS §4601: (1) for setting up and conducting a lottery; and (2) for being concerned in divers ways in the managing, conducting and carrying on of a lottery.

Dante was convicted on both counts; Elizabeth, on one count only,—in being concerned in the carrying on of a lottery. Dante was sentenced to pay the costs, a fine of $500 and to undergo imprisonment for not less than three months nor more than one year; Elizabeth was sentenced to pay a fine of $300 and undergo imprisonment for not less than one month nor more than one year.

The indictments grew out of a telephone call made to the Ambridge police department by a woman who said she was Elizabeth Bufalini, the appellant. She said that a man by the name of Alfred Maccaglia had been to her home and had pointed a gun at Dante Bufalini and threatened to kill him; that Maccaglia was at Guzan's tavern, at the corner of Ninth Street and Beaver Road and that her husband was on his way to that tavern. She said "please send the police up there

right away." When she came to the police station later, the appellant identified herself as the one who called the police.

In answer to the call, officers Katz and Klak went to Guzan's tavern in a patrol car. On the way the car was stopped by Maccaglia who told them he was being followed by two men in a car behind him and that they had guns. He further advised the officers that he had left his gun at Guzan's tavern and they later picked it up. The officers took Maccaglia and Dante and his brother, the occupants of the other car, with the guns, to the police station. He admitted he had pointed the gun at Dante. As a result of these circumstances Maccaglia was arrested for pointing deadly weapons and the lottery charges were brought against the Bufalinis. The cases were consolidated for trial with the consent of counsel.

The court below admitted into evidence written statements of the appellants, made at the police station, which read as follows: "I, Dante Bufalini of 1336 Highland Ave., Harmony Twp., do hereby make the following statement without any threats or promises and being aware that this statement may be used in case of a court trial.

"Yesterday about 5:00 P.M., Fred Maccaglia and Moe, his brother, came to my home and we talked about a business transaction which involved a numbers hit. They claimed that they played $6.00 on number instead of $3.00. I proved to them that they only played $3.00. Fred plays a $1.00 a day on 901 and his brother called in for another $2.00 on same number. Today Fred came to my house and told me to meet him at Guzan's Tavern with $3500.00 and pointed a gun at me, told me, be there at 9:00 P.M. or 9:30 P.M. or else. Then he left. I called my brother, Nando, and told him what happened and I also told my wife to call the police. So I, my brother and Mickey went to Guzan's

Tavern to reason with Fred and then the police came and picked us up. I have read the above statement and find it to be true to the best of my knowledge."

"I, Mrs. Elizabeth Bufalini, 1336 Highland Ave., Harmony Twp., Pa., do hereby make the following statement of my own free will and without any threats or promises and knowing that this statement may be used in court in case of a trial.

"It was around 8:00 o'clock this evening I was talking to a girl friend on a telephone and Fred Maccaglia knocked on the door. I didn't leave him in right away. I thought he was going to see my husband Dante in the yard. Then I left him in and I called for my husband. Fred stood there about 10 minutes. Fred didn't talk to me until Dante came from the cellar. Then the two went into the hall and began to argue. Fred told Dante that he owed him money on a numbers hit and that he wanted the money. I saw him pull out a gun and was pointing it at Dante. Then Fred told Dante to come to 9th St. & Beaver Rd. at a tavern and bring the money down or else. Then Fred walked out of the house and Dante called Nando, his brother, and told him that Fred had a gun and then Dante asked me to call the police. Fred had his brother call me about Wednesday August 2, 1961 and gave me number 901 to play for $3.00. Fred's brother is named Sylvester, nick name 'Moe'. I have read the above statement and find it to be true to the best of my knowledge."

The chief complaint of the appellants in seeking a reversal is that the admissions contained in the statements of the appellants were admitted without proof of the corpus delicti.

Here, we have people engaged in a lottery getting into a quarrel with a customer as to the amount bet on a winning number. The disappointed winner claiming that the operator had "welched", pointed a gun at the husband-appellant so that the frightened wife

called the police. What followed afterward when the police moved in answer to the appellant's call for help are all spontaneous reactions, including questions asked and charges made by those involved. We agree with the court below that: "We are of the opinion that the phone call by Mrs. Bufalini to the Ambridge police was a part of the res gestae and admissible as such. Spontaneous exclamations or declarations uttered during or immediately preceding or following the actual infliction of wounds or springing out of the actual commission of the crime, are admissible as within the res gestae rule. Moreover, such declarations are not objectionable because made in response to questions; and the exclamations or declarations of mere bystanders are admissible. See: Commonwealth v. Noble, 371 Pa. 138, 145 and cases there cited.

"Elizabeth Bufalini was no doubt laboring under the stress of great anticipated danger to her husband, and what she told the police about Maccaglia's difficulties with her husband, Dante, were borne out as true by the facts testified to by the police when they started out to hunt Maccaglia and found him." There was no problem of identification of the voice in this case because she appeared at the police station and identified herself as the Elizabeth Bufalini who made the call.

As the court below pointed out Alfred Maccaglia was called by the Commonwealth to testify to the lottery activities of the appellants but claimed the constitutional privilege not to incriminate himself, which the court below sustained. However, the court below, in its opinion, did not point out that Silvio Maccaglia was called by the Commonwealth and testified as follows: "Q. Did you play a number, or numbers with Mrs. Bufalini that week? A. Yes, sir, I did. Q. Have you played numbers with Mr. Bufalini during the past year or so? A. Occasionally." This was independent proof of the corpus delicti.

It is the settled law of Pennsylvania that a confession may not be considered unless the corpus delicti has been proven. *Com. v. Winter,* 174 Pa. Superior Ct. 35, 98 A. 2d 221 (1953), but, as Professor Wigmore said in his treatise on evidence (3rd Ed.) Vol. VII, §2072, "The meaning of the phrase 'corpus delicti' has been the subject of much loose judicial comment, and an apparent sanction has often been given to an unjustifiably broad meaning." Proof of the corpus delicti "is accomplished by proving (1) a specific injury or loss, and (2) some person's criminality as the source thereof." *Com. v. DuHadway,* 175 Pa. Superior Ct. 201, 203-4, 103 A. 2d 489 (1954). Like any other fact it may be proved by circumstantial evidence. *Com. v. Dolph,* 164 Pa. Superior Ct. 415, 65 A. 2d 253 (1949). In cases such as this the cases go no further than to hold that there can be no conviction upon the basis of a confession unless it is corroborated by the circumstances or by other testimony. *Com. v. Hornberger,* 199 Pa. Superior Ct. 174, 179, 184 A. 2d 276 (1962). In the instant case the corpus delicti was clearly established by the circumstances and by direct testimony independent of the confession. *Com. v. Chuing,* 150 Pa. Superior Ct. 445, 28 A. 2d 710 (1942) ; *Com. v. Cerzullo,* 175 Pa. Superior Ct. 330, 104 A. 2d 179 (1954) ; *Com. v. DeWan,* 181 Pa. Superior Ct. 203, 124 A. 2d 139 (1956). See also: University of Pa. Law Review, Vol. 103, page 638.

The complaint about admitted testimony concerning prior "numbers activities" by the appellants is without merit. This testimony was clearly admissible for the purpose of showing design, intent, plan or scheme. *Com. v. Grosso,* 192 Pa. Superior Ct. 513, 162 A. 2d 421 (1960).

We agree with the Commonwealth that *Com. v. Polite,* 190 Pa. Superior Ct. 329, 154 A. 2d 287 (1959), is not authorization for the proposition that a trial jury

must be instructed that to be found guilty the defendant must be found to be "substantially" concerned in a lottery. A charge in the language of the Act is sufficient. *Com. v. Tselepis,* 198 Pa. Superior Ct. 449, 181 A. 2d 710 (1962). The pertinent provision of the law is as follows. "Is in any way concerned in". And although Black's Law Dictionary does say that the meaning of "concerned in" includes "substantially engaged in", it also means "taking part in" and the Act reads "in any way". The jury need only find beyond a reasonable doubt that the defendant was concerned in or took part in the managing, conducting or carrying on the lottery in any way whatsoever.

All other questions involved have no merit and were properly disposed of by the opinion of the court below.

The judgment is affirmed, and it is ordered that appellants appear in the court below at such time as they may be there called and that they be by that court committed until they have complied with their sentence, or any part of it which had not been performed at the time the appeal was made a supersedeas.