# Commonwealth *v.* Coontz, Appellant.

*Criminal law—Murder—Corpus delicti—Declarations of defendant—Evidence.*

1. Where testimony adduced in a murder trial points to an unlawful killing, although it may indicate as well accident or suicide, statements of one accused of the homicide then become admissible to show that there was an unlawful slaying, and the accused's connection therewith.

2. The evidence in this case was held sufficient to establish the corpus delicti, and justify a verdict of guilty of murder of the second degree.

*Criminal law — Murder — Circumstantial evidence — Charge of court.*

3. In a murder trial, the judge cannot be convicted of error in charging that, so far as the proof of defendant's guilt rests upon circumstantial evidence, "such evidence must be incompatible with his innocence of such charge upon any rational theory, and incapable of explanation upon any other reasonable hypothesis than that of guilt, otherwise defendant should be acquitted of such charge."

*Criminal law—Murder—Inspection of premises—Absence of defendant—Objection.*

4. In a murder trial, the fact of the absence of defendant while the court, jury and counsel made a view of the premises where the crime was committed, is not ground for reversing a conviction.

5. Even if such objection were proper, it is too late to raise it sometime after the court had handed down an order refusing a new trial, and then by a motion for reargument.

*Criminal law—Murder—Second degree—Sentence.*

6. On a murder trial, where the prisoner has been convicted of murder of the second degree, the court may sentence him to imprisonment "for and during an indefinite period of not less than two years nor more than five years."

*Criminal law—Murder—Evidence—Acquittal of accomplice.*

7. In a murder trial, the previous acquittal of an accomplice of defendant by a directed verdict in a separate trial, is not a material fact bearing on the case against defendant.

Argued November 22, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 5, March T., 1927, by defendant, from judgment of O. & T. Fayette Co., June T., 1924, No. 1, on verdict of guilty of murder of the second degree, in case of Commonwealth v. Andrew Coontz. Affirmed.

Indictment for murder. Before REPPERT, J.

The opinion of the Supreme Court states the facts.

Verdict of guilty of murder of the second degree on which the prisoner was sentenced to imprisonment "for and during the indefinite period of not less than two years nor more than five years." Defendant appealed.

*Errors assigned* were various rulings and instructions, and the sentence, quoting record.

*H. S. Dumbauld,* with him *W. Taylor George,* for appellant.—The corpus delicti was not proven: Com. v. Gardner, 282 Pa. 458.

The presumption of innocence was not overcome: Com. v. Byers, 45 Pa. Superior Ct. 37.

Absence of defendant while court and jury made a view of the premises, was error: Com. v. Corsino, 261 Pa. 595, 597; Noell v. Com., 135 Va. 600,

*A. E. Jones,* with him *E. D. Brown,* District Attorney, and *George Patterson,* for appellee, cited: Com. v. Van Horn, 188 Pa. 143; Com. v. Gardner, 282 Pa. 458, 463; Com. v. Bishop, 285 Pa. 49.

OPINION BY MR. JUSTICE SCHAFFER, January 3, 1927:

Defendant by this appeal challenges his conviction of murder of the second degree. While several questions are presented to us, there is one which is major and controlling; all the others lose significance when it is disposed of. Was a crime committed?

Defendant with one Robinson left Morgantown, West Virginia, on the afternoon of the occurrences with which we have to deal. They were in a two-seated automobile and their destination was Uniontown, Pennsylvania. Their purpose in visiting Uniontown is not altogether satisfactorily explained; ostensibly it was to go to a bank there in which defendant had a deposit but they did not start on their journey until two o'clock and did not reach Uniontown until five, some time after the bank had closed. They remained about Uniontown until evening, shortly after seven o'clock, and then took their departure for Morgantown. When they reached a point beyond Fairchance, a small community some miles on their journey, they were stopped by the deceased, Lon Sutton, who was a constable. Just why he stopped them is not made very clear, although it would appear that he asked for the driver's license cards. Evidently not being satisfied with what was produced the officer directed that the car be turned around and driven back to Fairchance. He stepped on the running board and Robinson, who was driving, turned the car around and started down a hill, the constable standing on the running board on the right side of the car, which was the side on which defendant was seated. The stopping of the car and the events which followed were observed by witnesses who, however, could not hear what was said. As the car proceeded down the hill, its

speed was accelerated until it attained great momentum and instead of being driven straight down the hill, the driver zigzagged from side to side of the highway. Near the bottom of the hill, the constable was seen to fall backward from the running board. The car did not stop but continued its flight. Persons who had observed the officer's fall ran down the hill and found him by the roadside dead, his skull crushed in. The occupants of the car did not return to the scene of the tragedy, although defendant had lost his cap which was found not far from the body. Defendant further along the road alighted from the car. Robinson drove away and left him and did not see him again that night. In the early morning, two or three o'clock (the constable had been killed not later than eight o'clock) travelers by automobile met defendant on the highway, took him into their car, found that he was hatless and heard from him a story accounting for his presence on the road, which was untrue. He accounted for his being there in the early morning hours by the statement that he had been drinking. There was no evidence on his breath or otherwise of drink. At that time there were scratches on his face and hand. The defendant did not take the stand in his own behalf and Robinson, who did, told a tale in many respects improbable. He vouchsafed no explanation as to why the car was not stopped when the officer fell from it or why neither he nor defendant went back to ascertain what had happened to him. When the cap of defendant, found in the road near the body of deceased, was produced to defendant, he at first denied that it was his.

The officer's body was found lying by the side, but clear of the hard traveled part, of the tarvia road, about a foot and a half from a telegraph pole. His skull was crushed on the right side, but his right ear was not injured. There were no marks on the telegraph pole indicating contact with it. There was a cut of considerable depth on the right hand and a deep clean cut under

the chin; neither of these cuts was such as would have been likely to have been made by contact with the roadway. As the body lay, the head was not opposite the pole but the pole was midway between the hips and shoulders with the head resting beyond the pole and in the ditch along the roadside. The butt of a revolver was found in the road near the body; the rest of it could not be found; the flashlight which the officer had used to signal the car to stop and which he had when he stepped on the running board was missing; his hat, with blood inside and above the hat band and with dents in it corresponding to the wounds on his head, was found in the road four or five feet from the body and the telegraph pole. The deceased's necktie had been pulled so tight around his neck that it could not be untied to remove it and had to be cut. These circumstances the Commonwealth contends were indicative of a struggle on the car and that the deceased fell from it after he had been assaulted by its occupants, his right hand and neck cut and his skull fractured. Appellant contends there was no assault and that the deceased accidentally fell from the car and his head struck the telegraph pole.

On the following morning when appellant was under arrest, he made a statement in writing to the county detective in which he told of the officer's having stopped the car and ordered Robinson to turn it around and to go back to Fairchance, of their having done so, Robinson driving, "and after he went about 100 yards, he started to go fast and pulled the car from one side of the road to the other; at the same time Lige [Robinson] told me to push the constable off the running board; he the said constable had gotten on when we turned the car around; I did not want to push him, but just put my hand out and he fell."

Under the foregoing facts which we have epitomized from the record, we reach the conclusion that there was sufficient testimony in volume and quality to submit to the jury upon the question whether a murder had been

committed and to warrant them in finding that there had been and that defendant was a participant in the crime.

It is argued that there was no sufficient proof of the corpus delicti and that it was not so proved as to make the statement of appellant admissible. This is clearly untenable. The circumstances recited above, particularly the position of the body on the road, the cuts on deceased's hand and head, and the nature of the main wound on the head, are certainly consistent with crime, though they are perhaps not inconsistent with an accident. When testimony adduced points to an unlawful killing, although it may indicate as well accident or suicide, statements of one accused of the homicide then become admissible to show that there was an unlawful slaying and the accused's connection therewith. We make this clear in Com. v. Gardner, 282 Pa. 458, and in Com. v. Bishop, 285 Pa. 49, saying in the former case at page 464: "It sometimes happens the circumstances attending the act may be consistent with crime, suicide or accident. In such cases, the corpus delicti is proven where the circumstances attending the death are consistent with crime, though they may also be consistent with accident (Com. v. Johnson, 162 Pa. 63), or suicide (Zell v. Com., 94 Pa. 258), and it is not necessary to show by affirmative proof that the latter two possibilities do not exist before evidence as to who did the act is admitted." In Com. v. Bishop, we held that the corpus delicti was sufficiently established by the nature of the wounds and the circumstance that no firearm was found near the body: "So far as known, the deceased had with him no firearm and none was found in the vicinity of the body, which, with the report of three shots, pointed to homicide rather than suicide, and afforded ample evidence of the corpus delicti to justify the admission of a confession." See also Com. v. Marshall, 287 Pa. 512.

Complaint is made that the court did not charge adequately as to the effect of circumstantial evidence. Our

reading of the court's instructions finds no basis for this criticism. The jury was told that, "So far as the proof of the defendant's guilt of any of the charges contained in the indictment rest upon circumstantial evidence, such evidence must be incompatible with his innocence of such charge upon any rational theory, and incapable of explanation upon any other reasonable hypothesis than that of guilt, otherwise the defendant should be acquitted of such charge." We think this gave the jury a proper standard by which they could measure the circumstantial evidence before them.

Another matter brought to our attention is that the jury visited the scene of the crime without the defendant being present. No objection was raised at the time, indeed appellant's counsel requested the view and went with the jury. Not until sometime after the court had handed down the order refusing a new trial was this question raised and then by a motion for a reargument. This was too late had there been merit in the position, which there was not: Com. v. Van Horn, 188 Pa. 143; 30 A. L. R. 1357; 16 Corpus Juris 816.

It is suggested that in imposing sentence the court may not do so for an indefinite period of not less than two years nor more than five years. No reason is pointed out why this may not be done and as the proposition is not argued in the brief, we conclude it was deemed without merit.

Much point is made of the circumstances that Robinson, who was separately tried before another judge, was acquitted by a directed verdict. We do not know what proofs were produced against him, but, whatever they were, the result as to him has no bearing on the case before us.

The assignments of error are overruled and the judgment is affirmed.