636 A.2d 474

Robert Leslie BALLARD, Jr.

v.

STATE of Maryland.

No. 55, Sept. Term, 1993.

Court of Appeals of Maryland.

Jan. 31, 1994.

Victoria S. Lansburgh, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for petitioner.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., of Maryland, both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE,* CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

RODOWSKY, Judge.

The issue here involves the rule requiring corroboration of the confession of an accused by some independent evidence of the *corpus delicti.* We return to this well plowed ground

---

* McAuliffe, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

because of the contentions of the petitioner, Robert Leslie Ballard, Jr. (Ballard), who stands convicted, *inter alia*, of felony murder in an attempted robbery. Ballard contends that corroboration of the *corpus delicti* in this case requires independent proof of the attempted robbery. As explained below, this contention greatly overstates the corroboration requirement.

Ballard was convicted by a jury in the Circuit Court for Prince George's County of felony murder, attempted armed robbery, and the use of a handgun in the commission of a crime of violence. He was acquitted of premeditated murder. The court imposed a life sentence and a consecutive five year term for the handgun conviction. For purposes of sentencing, the attempted armed robbery conviction was merged into the felony murder.

The Court of Special Appeals affirmed in an unreported opinion. This Court granted Ballard's petition for certiorari, which raised the following question:

> "Whether the Court of Special Appeals erred in holding that the petitioner's confessions alone were enough to establish the corpus delicti of the offense of attempted robbery with a deadly weapon, under the circumstances of the instant case."

The murder victim was Ferris Bernard Dyson (Dyson), age twenty-five. On the night of January 8, 1992, Dyson had dinner with his fiancee at her apartment at 6801 Milltown Court, District Heights, Maryland. Dyson's fiancee was pregnant with their child, whose birth was imminent. At about 9:30 p.m. Dyson left to take a Metro bus to visit his grandmother. Dyson walked one block to the bus stop on Walker Mill Road, at Karen Boulevard, adjacent to the Walker Mill Garden Apartments complex, in Capitol Heights. While at the bus stop Dyson was mortally wounded by a .25 caliber bullet fired from a semiautomatic handgun that was held eighteen to twenty-four inches from the left side of Dyson's head. The bullet entered into the left ear, crossed the left

side of the brain and lodged in the right side of the brain, on a trajectory that was slightly upward and slightly back to front.

The first police officer on the scene was Officer Nelson William Rhone, Jr. of the Prince George's County Police Department. Officer Rhone was working part time as a security officer for the Walker Mill Garden Apartments. At approximately 9:45 p.m. he heard a report over the police radio "saying shots had just been fired, and a man was down on the corner of Karen Boulevard and Walker Mill Road." Officer Rhone went to that location, found Dyson, summoned an ambulance, and secured the scene.

Dyson was taken to the intensive care unit at Prince George's Hospital. Dyson's fiancee saw him there the next day when she was in that hospital to deliver their child. Dyson died two days after the shooting.

No weapon was found at the scene of the shooting. The police, however, did find a .25 caliber shell casing on the sidewalk of Walker Mill Road near the bus stop. Dyson had a toothbrush and $21.15 on his person.

The petitioner, Ballard, was then a seventeen year old special education student at Central High School. One of the Central High teachers, Elizabeth Ann Wilson, acting on information she had heard "in the community," asked Ballard about the shooting. Ballard made statements, constituting admissions or confessions, to Ms. Wilson, and then to the school security officer, to the school principal, to the police, both orally and in writing, to his father, and to the court and jury at trial.

The substance of these statements was that Ballard and his friend, Cory Urquahart (Urquahart), had spent the late afternoon and early evening of Wednesday, January 8, 1992, drinking vodka and grapefruit juice in Urquahart's mother's apartment in the Walker Mill Garden Apartments. Then they went out for a walk. Urquahart had furnished Ballard with a .25 automatic to carry, and Urquahart also was carrying a handgun. At about 9:45 p.m. they saw a man whom they did not know at the bus stop near the entrance to the Walker Mill

Garden Apartments. Urquahart suggested that they rob the man. Ballard "was getting ready to rob him, pulled out the gun, pointed it at the man, and the gun fired." The youths ran from the area of the bus stop, through the garden apartment building closest to Walker Mill Road, around the swimming pool of the apartments, and back to Urquahart's mother's apartment. They hid the guns under a chair in Urquahart's bedroom where the police, executing a search warrant, later recovered them.

The State established that the .25 caliber bullet taken from Dyson's brain had been fired from the .25 caliber semiautomatic found at the place where Ballard said that the weapon had been hidden after the shooting.

In oral, extrajudicial statements and in his testimony at trial, Ballard at times said that, because he had been drunk, he had no recollection of the shooting, and that his various statements identifying himself as the shooter were based upon what Urquahart had told him had happened.

 The only direct, as contrasted with inferential, evidence that Ballard and Urquahart were attempting to rob Dyson is found in Ballard's statements. He contends that, in order to convict, there must be evidence, independent of his statements, to corroborate the attempted robbery which underlies his felony murder conviction. That is not the Maryland law.[1]

*Woods v. State*, 315 Md. 591, 556 A.2d 236 (1989), defeats Ballard's contention. That was a contract murder case in

---

1. The corroboration requirement, like the parol evidence rule, is a rule of substantive law and not a rule of evidence. Thus, although Ballard's multiple admissions and confessions came into evidence essentially without objection, Ballard was not precluded from contending, in support of his motion for a judgment of acquittal, that the confessions could not be considered in weighing the sufficiency of the evidence to convict. The timing of a ruling on the sufficiency of corroboration of the *corpus delicti, i.e.,* whether made conditionally or unconditionally when a confession or admission is offered, or deferred until ruling on a motion for judgment of acquittal, is a function of defense tactics and trial court discretion.

which the killer confessed to having shot the victim three or four times at point blank range. We said:

> " 'In a homicide case the proof of the *corpus delicti* is sufficient if it establishes the fact that the person for whose death the prosecution was instituted is dead, and that the death occurred under circumstances which indicate that it was caused criminally by someone.' "

*Id.* at 617, 556 A.2d at 249 (quoting *Jones v. State,* 188 Md. 263, 272, 52 A.2d 484, 488 (1947)). In *Woods,* the evidence apart from the confession established that the victim died of gunshot wounds. We said that "[t]he gunshot wounds were enough to show that the manner of death was homicide—that [the victim's] death was not by accident or suicide but was caused criminally by someone." *Id.* at 617, 556 A.2d at 249. That was sufficient corroboration to consider the confession, and the State's proof was sufficient to sustain the conviction of murder in the first degree.

The rule as stated in *Jones* has also been stated in *Thanos v. State,* 330 Md. 77, 97, 622 A.2d 727, 736 (1993), *Whittlesey v. State,* 326 Md. 502, 560 n. 11, 606 A.2d 225, 254 n. 11 (1992) (Bell, J., dissenting), *Bagley v. State,* 232 Md. 86, 96, 192 A.2d 53, 58 (1963), *Pierce v. State,* 227 Md. 221, 226, 175 A.2d 743, 744 (1961), *Crouch v. State,* 77 Md.App. 767, 770, 551 A.2d 943, 944, *cert. denied,* 315 Md. 307, 554 A.2d 393 (1989), *Hurley v. State,* 60 Md.App. 539, 549, 483 A.2d 1298, 1303 (1984), and *Lemons v. State,* 49 Md.App. 467, 473, 433 A.2d 1179, 1183, *cert. denied,* 292 Md. 13 (1981).

Here, the fatal weapon was not by the victim's body. Suicide can therefore be excluded. Further, the independent evidence indicates that Dyson's death was not an excused, accidental homicide. Officer Rhone's hearsay statement, that multiple shots were fired, came into evidence without objection. An F.B.I. firearms identification expert testified that the .25 caliber semiautomatic murder weapon required a distinct five and one-half pound pull on the trigger in order to fire each round, and that that pull was standard for the weapon.

Viewing the facts from the foregoing perspective, the instant matter is indistinguishable from *Woods*.

If one infers from the fact that the police found only one shell casing at the crime scene the further fact that only one shot was fired, the *corpus delicti* was nevertheless established. Based on the gunpowder stippling around the entrance wound at Dyson's left ear, the opinion of the medical examiner was that someone pointed a loaded firearm at Dyson's head from eighteen to twenty-four inches away. Thus, the independent evidence demonstrates, at a minimum, such recklessness in the handling of the weapon by someone as to constitute involuntary manslaughter and, thereby, a criminal homicide that satisfies the corroboration requirement. *See Duckworth v. State*, 323 Md. 532, 542–44, 594 A.2d 109, 113 (1991) (pointing a firearm at a nearby human being, without justification and without being certain that it is unloaded, is generally sufficient to support a manslaughter conviction where an unintended discharge of the weapon results in death).

Ballard principally relies on *Hadder v. State*, 238 Md. 341, 209 A.2d 70 (1965), which he reads as impliedly recognizing that independent proof of the underlying felony is required. Hadder was convicted of the first degree murder of a police officer. The jury had not been asked to specify whether it found premeditated murder or murder in the course of an attempted robbery or both. The facts were these.

At about 1:15 a.m. the dead body of a uniformed Prince George's County police officer was found over an embankment off of a highway. *Id.* at 345, 209 A.2d at 72. On the road, thirty to forty feet away, was the officer's police cruiser with its motor running, its headlights on, and its red light flashing. The officer had been killed by a .45 caliber bullet, fired from no more than twelve inches away, which entered the chest, emerged from the left side of the victim's back near the belt line, and remained in his clothing. Another .45 caliber bullet had been fired into the dashboard of the cruiser. At various places in or near the crime scene the investigators found the dead officer's .38 service revolver, six empty .38 cartridge

casings, a .45 automatic pistol, an automobile registration, a wallet, and a shoe. Later that day Hadder surrendered himself and gave several statements. In one statement Hadder said that, after having been stopped by the officer and while seated in the patrol car, he intended to take the officer's gun and car keys in order to escape. *Id.* at 346, 209 A.2d at 72–73. On appeal, Hadder contended that independent corroboration of that portion of his statement, expressing intent, was required. *Id.* at 352, 209 A.2d at 76.

The physical facts in *Hadder* demonstrated that the officer was dead as the result of a criminal act by someone. That is all that is required to corroborate the *corpus delicti,* as explained above. The opinion in *Hadder,* however, does not cite *Jones v. State,* 188 Md. 263, 52 A.2d 484, and the opinion reviews all of the evidence. In his brief in this case, Ballard argues that *Hadder* is consistent with requiring independent proof of the underlying attempted robbery where that crime is the basis for felony murder. Although *Hadder'*s discussion went beyond corroboration of the *corpus delicti,* as *Jones* and its progeny defined it, and considered corroboration of Hadder's criminal agency, there was no mention of any independent evidence directly corroborating the attempted robbery.

In his statements Hadder acknowledged that he had been transporting illicit liquor. Hadder also admitted that, while seated in the right front seat of the cruiser, next to the officer, he drew his .45 handgun and a tussle ensued in which the handgun discharged and was wrested from Hadder by the officer. Hadder fled on foot, pursued by the officer who shot at him. Later, Hadder returned, got his own car, and drove away. Hadder again returned to the scene, made a U-turn, parked behind the police car, looked for his .45 handgun, could not find it, reentered his car, and left. *Id.* at 346–48, 209 A.2d at 72–74.

Independent evidence showed that while passing through Prince George's County about two hours earlier that evening, Hadder had obtained road service from a gasoline station that sold him a new tire, for which Hadder did not pay. The

station operator notified the police. The vehicle registration, the wallet, the shoe, and the .45, all found at the scene, were Hadder's. The bullet that passed through the officer's body was fired from Hadder's .45 handgun. Indeed, an eyewitness also saw Hadder's car return to the scene and execute the U-turn maneuver. *Id.* at 345–49, 209 A.2d at 72–74.

Thus, Hadder's statements dovetailed with the independent evidence, which thereby corroborated many of the material facts contained in Hadder's statements. But nothing in the independent facts tended to prove affirmatively that it was Hadder's intent, when drawing the .45, to take the officer's car keys and service revolver in order to escape. Indeed, the stronger inference from the independent facts alone is that Hadder intended to effect his escape by shooting the officer, as opposed to leaving the officer without a weapon and transportation.

It is well settled in this State that "the independent evidence ... need not be full and complete or establish the truth of the corpus delicti beyond a reasonable doubt or by a preponderance of proof." *Birchead v. State,* 317 Md. 691, 706, 566 A.2d 488, 495 (1989). *See also Woods v. State,* 315 Md. at 616, 556 A.2d at 248; *Hadder,* 238 Md. at 353, 209 A.2d at 76. We have said also that "the independent evidence necessary to support the confession need not be 'full and positive' proof of the *corpus delicti* and may be small in amount, if such proof, when considered with the confession, convinces the jury beyond a reasonable doubt of the guilt of the accused." *Bradbury v. State,* 233 Md. 421, 425, 197 A.2d 126, 128 (1964) (quoting *Pierce,* 227 Md. at 226, 175 A.2d at 744).

Illustrative of these rules is *Commonwealth v. Coontz,* 288 Pa. 74, 135 A. 538 (1927), the authority relied upon by this Court in *Jones v. State,* 188 Md. at 272, 52 A.2d at 488, to support the description, most recently repeated in *Thanos,* 330 Md. at 97, 622 A.2d at 736, of the operation of the corroboration requirement in homicide cases. In *Coontz* the appellant was convicted of second degree murder. The independent evidence came from eyewitnesses who could see the events,

described below, but could not hear what the participants in the events were saying. 288 Pa. at 76, 135 A. at 539. While an automobile in which the appellant was a right front seat passenger was being driven up a hill outside of a town, a police officer stopped the vehicle and climbed onto the right side running board. Id. at 77, 135 A. at 539. The vehicle made a U-turn and proceeded back down the hill, swerving from side to side. Near the bottom of the hill the police officer fell backwards from the running board. The officer's dead body, with his skull crushed, was found by the side of the traveled portion of the road about one and one-half feet from a telegraph pole. The occupants of the car fled in it, but the appellant was arrested the next day. In his statement the appellant admitted that the driver had told the appellant to push the constable off the running board, that the appellant had put his hand out, and that the officer fell. *Id.* at 78, 135 A. at 540.

The Supreme Court of Pennsylvania held that the statement was admissible based on the following analysis of the corroboration requirement:

> "[T]he position of the body on the road, the cuts on deceased's hand and head, and the nature of the main wound on the head, are certainly consistent with crime, though they are perhaps not inconsistent with an accident. When testimony adduced points to an unlawful killing, although it may indicate as well accident or suicide, statements of one accused of the homicide then become admissible to show that there was an unlawful slaying and the accused's connection therewith."

*Id.* at 79, 135 A. at 538.

In the case before us the urban setting of the shooting, in the dark of night and in the dead of winter, and the gunpowder markings around the wound, coupled with the required trigger pressure, negate any inference of accident to a much greater degree than accidental homicide was negated by the inferences in *Coontz.*

■ The Maryland corroboration requirement, operating in homicide cases as above described, does not require that every element of the consummated crime be independently established. Accordingly, the Court of Special Appeals in *Ball v. State,* 57 Md.App. 338, 470 A.2d 361 (1984), *modified on other grounds sub nom. Wright v. State,* 307 Md. 552, 515 A.2d 1157 (1986), correctly rejected an argument in a felony murder case that there was insufficient corroboration because the only evidence of an attempted robbery was the statement of the appellant. "The requirement that there be some corroborating evidence tending to establish the *corpus delicti* generally, does not establish an independent corroboration requirement as to each component element of the *corpus delicti.* " 57 Md.App. at 351, 470 A.2d at 368. *Ball* was relied upon by the Court of Special Appeals in its unreported opinion in the instant matter.

A national overview of the corroboration requirement is presented in 1 *McCormick on Evidence* § 145 (Strong 4th ed. 1992).

"The traditional formulation of the requirement, still applied by most jurisdictions, demands that there be some evidence other than the confession that tends to establish the *corpus delicti*. . . .

"There is some dispute regarding the definition of *corpus delicti,* which literally means the 'body of the crime.' To establish guilt in a criminal case, the prosecution must ordinarily show that (a) the injury or harm constituting the crime occurred; (b) this injury or harm was done in a criminal manner; and (c) the defendant was the person who inflicted the injury or harm. Wigmore maintains that *corpus delicti* means only the first of these, that is, 'the fact of the specific loss or injury sustained,' and does not require proof that this was occasioned by anyone's criminal agency. . . .

"Most courts, however, define *corpus delicti* as involving both (a) and (b). This means that the corroborating evidence must tend to show the harm or injury and that it was occasioned by criminal activity. It need not, however, in

any manner tend to show that the defendant was the guilty party. Thus in a homicide case, the *corpus delicti* consists of proof that the victim died and that the death was caused by a criminal act, but it need not tend to connect the defendant on trial with that act.

"The traditional approach has been to require that the elements of the offense be carefully distinguished and that the corroborating evidence tend to show each of those elements. A growing number of courts, however, are abandoning the strict requirement that the corroborating evidence tend to prove all elements of the *corpus delicti*. Thus the corroborating evidence need only tend to show the 'major' or 'essential' harm involved in the offense charged and not all of the elements technically distinguished. This tendency is most pronounced in homicide cases, where defendants are often tried for offenses that involve requirements beyond simply the causing of death in a criminal manner. . . .

"Felony murder cases have posed the problem with special difficulty. Under the traditional application of the *corpus delicti* formulation, the elements of felony murder include the predicate felony as well as the fact of death and the causing of it in a criminal way; thus, corroborating evidence would have to tend to prove that predicate felony. Most courts, however, have balked at this and have held that the corroborating evidence need not tend to prove the predicate felony."

*Id.* at 557–59 (footnotes omitted). Thus, the rule with respect to felony murder cases that this Court announced in *Jones* and applied in *Woods, Thanos,* and other cases cited above is that applied by "[m]ost courts." *Id.* at 557–58. Further, McCormick points out that "[a] growing number of courts" do not require "that the corroborating evidence tend to prove all elements of the *corpus delicti,*" but only the major or essential harm involved in the charged offense. *Id.* at 558. That is the rule applied by the Court of Special Appeals in *Ball* which we now approve.

Ballard's brief also discusses a "trustworthiness" rule. He asserts that, if this Court applied a "trustworthiness" analysis to test whether the confessions in this case should be considered, they would be excluded from the sufficiency calculus. Under this approach, "the corroborative evidence need not be sufficient, independent of the statements, to establish the *corpus delicti*," but the State would be required "to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement." *Opper v. United States,* 348 U.S. 84, 93, 75 S.Ct. 158, 164, 99 L.Ed. 101, 108–09 (1954). Ballard points out that the Supreme Court of North Carolina has recently announced that it "need not adhere to [its] strict rule requiring independent proof of the *corpus delicti*," and that it has adopted the trustworthiness rule. *State v. Parker,* 315 N.C. 222, 235, 337 S.E.2d 487, 494 (1985). Ballard suggests that this Court either could or should apply the same approach here.

We need not consider a trustworthiness rule in this case because, even if it were to be applied in some fashion, it would not alter the result. The circumstances surrounding Ballard's many oral and written inculpatory statements, including particularly the fact that his admissions were repeated in open court, demonstrate the trustworthiness of his statements.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY THE PETITIONER.*