COMMONWEALTH vs. RICHARD MORGAN.

Suffolk. January 10, 1996. - April 3, 1996.

Present: LIACOS, C.J., ABRAMS, LYNCH, O'CONNOR, & FRIED, JJ.

*Practice, Criminal,* Instructions to jury, Capital case. *Controlled Substances. Felony-Murder Rule. Attempt. Robbery. Evidence,* Hearsay, Admissions and confessions. *Homicide. Malice. Self-Defense. Jury and Jurors.*

At a murder trial the judge's instruction to the jury on the effect of the defendant's consumption of drugs on the defendant's state of mind was more than the evidence required and there was no error in the judge's refusal to give an additional instruction on that issue. [376-378]

Evidence at a murder trial, including the defendant's admissions, was sufficient for the judge to instruct the jury on armed robbery as the underlying felony for felony-murder. [378-379]

At a murder trial there was no substantial likelihood of a miscarriage of justice created by the alleged hearsay testimony of a prosecution witness, where the judge clearly instructed the jury to consider only what the witness testified the defendant had said to him, i.e., the defendant's admissions, which were relevant. [379-380]

At a murder trial, the judge's instructions on malice, considered as a whole, did not create a substantial likelihood of a miscarriage of justice [380-382], and any error in the instruction on the third prong of malice was not relevant where the defendant was prosecuted and convicted on the theories of felony-murder and deliberate premeditation [382]; moreover, evidence of the defendant's stabbing the victim in the abdomen with a knife having a six-inch blade did not raise a serious question with respect to the presence of malice [382].

On the evidence presented at a murder trial the defendant was not entitled to an instruction on self-defense and there was no merit to the defendant's claim that the judge's instruction on malice aforethought should have reflected that issue. [382-383]

A defendant convicted on a general verdict of guilty of murder in the first degree was not entitled to any relief on the basis that the judge did not, on his own motion, give a unanimity instruction with respect to the theory of culpability, where there was sufficient evidence presented to warrant the jury's finding of guilty on the theories of felony-murder and deliberate premeditation and where the jury were properly instructed on both theories and given a unanimity instruction with respect to the degree of murder. [383-384]

INDICTMENTS found and returned in the Superior Court Department on March 6, 1992.

The cases were tried before *Patrick F. Brady,* J.

*Russell C. Sobelman* for the defendant.

*W. Matthew Iler,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant, Richard Morgan, was convicted of murder in the first degree and armed assault with intent to rob. On appeal, the defendant claims that the trial judge erred in: (1) failing to instruct the jury sufficiently on the effect of drug consumption in reducing first degree to second degree murder; (2) instructing the jury on felony-murder; (3) admitting testimony of a witness who had read transcripts of prior proceedings; (4) giving erroneous instructions on "malice aforethought"; and (5) failing to seek clarification of the grounds for the jury's verdict of murder in the first degree. We reject these contentions, and also we conclude that there is no basis for granting the defendant relief pursuant to G. L. c. 278, § 33E (1994 ed.). Accordingly, we affirm the defendant's convictions.

The relevant evidence taken in the light most favorable to the Commonwealth, *Commonwealth* v. *Judge,* 420 Mass. 433, 435 (1995), was as follows: The victim, a young white male, left a pub on Dorchester Avenue in the Dorchester section of Boston around 12:40 A.M. to walk home to his apartment which was several blocks away. He left the pub before his friends did and was walking alone.

Two men who were driving on Dorchester Avenue at about 12:40 A.M. saw a black man and a white man "wrestling." They observed that the black man was muscular and about five feet eight inches tall. He wore a hooded sweatshirt, a dark coat, dark pants, white sneakers, and a plaid shirt. During the fight there was a light colored Chevrolet Impala automobile parked nearby with a "big" black man seated in the driver's seat. The black man in the fight was "swiping" at the white man. After one of the swipes, the white man started to scream and took off running and screaming. The black man then got in the waiting Chevrolet which drove away. The witnesses then followed the victim and asked him if he was all right. The victim pulled up his sweater and showed them "a hole in his belly" with "blood around it." The witnesses then drove off after the assailant's automobile and wrote down the license plate number. They then pulled over and one of them called "nine one one" and reported that they

had observed a fight where a man had been stabbed. They repeated the license number that they had written down and returned to assist the victim whom they found lying on the porch of a residence.

The automobile bearing the license plate observed at the scene, a Chevrolet Impala, was loaned by the owner to his son, Ronnie Haggins, on the day of the stabbing. The defendant is a friend of Haggins and the family, and he rather than Haggins returned the automobile the next day.

A beige Chevrolet Impala with the same license plate was observed by two police officers about the same time as the stabbing. In the automobile were two black males, the driver being taller than the passenger. The police officers followed the automobile for several minutes and observed that the men appeared very fidgety. The officers were then called by their dispatcher to go to the residence where the victim lay. The victim told them: "A black guy stabbed me."

Haggins had taken his cousin to a local bar around 10 P.M. using his father's beige Chevrolet Impala. At about 1:30 A.M., Haggins and the defendant picked up the cousin in the Impala and took her back to her apartment. The defendant went into the apartment and washed his hands. The cousin saw that he had blood on his coat and that he had a wooden-handled knife approximately six inches long. She overheard the defendant say that he stabbed someone in the stomach and he hoped the victim did not die. The defendant then left the apartment, stating that he was going to burn his coat. Sometime during the winter, the cousin met the defendant and gave him a telephone number that Haggins had given her. The defendant told her to tell Haggins not to say anything about the incident; to which she replied that Haggins was not going to "take the rap" for him.

One of the other women who lived in the apartment confirmed that the defendant arrived at the apartment around 1:30 A.M. with blood on his jacket. She overheard the defendant say that the defendant and Haggins had gone to the store to get some "reefer papers" and encountered a man who attacked him with a knife, and in the struggle, the defendant stabbed his assailant.

At some time prior to trial the defendant told a fellow inmate that "one night [the defendant] and his . . . cousin [were] getting high, and his cousin took his uncle's automo-

bile, and they went driving. They ended up on Dorchester Avenue." He said he was wearing a hooded jacket, and he approached a "white dude" who was "drunk" and "coming out of a bar." The defendant said he was trying "to rob him," but "he didn't even rob him." The defendant stated that he "stabbed the dude" while "his cousin was waiting on him in the car." The defendant also told him that "he was getting high" on cocaine on the night of the murder.

The defendant told another inmate that he was trying to get Haggins to change the statement that he had given to the police that the defendant had stabbed the victim. He said that Haggins "wanted to get high badder than [the defendant] did," that "they were going out to get some money to get high" and that "I wish I never went out to get any money and saw that . . . bastard."

During the course of preparing for trial the defendant allowed a third inmate, Troy Nunes, to read transcripts of previous proceedings of his case and they discussed possible defense strategies. The defendant told Nunes that, after the stabbing, he went with Haggins to the apartment where the three women lived. He also said that, "if [Haggins] just keeps his mouth shut, they don't have nothing on [the defendant] at all."

We begin our discussion with issues which were the subject of objections at trial.

1. *Instruction on the effect of drug consumption.* The judge instructed:

> "When the Commonwealth must prove the defendant's intention to do something, his knowledge, or his state of mind, you should consider all the credible evidence relevant to the defendant's intent, knowledge, or state of mind, including any credible evidence of the effect on the defendant of his consumption of drugs, if any."

This instruction is directly from *Commonwealth* v. *Sires,* 413 Mass. 292, 300-301 (1992). The defendant claims on appeal that this instruction was inadequate and that he was entitled to an instruction explaining how the influence of drugs might reduce his culpability from murder in the first degree to murder in the second degree.

Trial counsel repeatedly requested that the judge give an

additional instruction on drug intoxication. The judge stated that the instruction given was sufficient on that issue and refused to supplement it. The Commonwealth argues that the defendant failed to preserve his appellate rights because he did not specifically object once the judge refused his request. We have stated that appellate rights have been properly preserved when a specific instruction has been requested and rejected by the judge. *Commonwealth* v. *Biancardi,* 421 Mass. 251, 253 (1995). Therefore, we consider the issue on the merits.

There was nothing in the evidence presented that suggested debilitating intoxication. See *Commonwealth* v. *Herbert,* 421 Mass. 307, 316 (1995). Evidence was offered by the prosecution to show that the defendant was motivated by a desire to rob the victim to get money to buy drugs.[1] The defendant attempted to impeach the credibility of those witnesses and did not present any evidence as to the defendant's drug use or intoxication on the day in question. The theory on which a case is tried below cannot be changed on appeal. *Commonwealth* v. *Fano,* 400 Mass. 296, 306 (1987).

Furthermore, we stated in *Commonwealth* v. *Sires, supra* at 299-300, where there is evidence of the effects of the consumption of drugs that, if believed, would be relevant to a defendant's state of mind or knowledge, then a simple instruction is required. In the present case, the judge gave the instruction, approved in *Sires,* even though there was no evidence presented of any debilitating effect on the defendant

---

[1]The defendant on appeal cites to testimony by several of the prosecution's witnesses to show evidence of drug-induced intoxication by the defendant.

The Commonwealth's witness, Shawn Richards, who was in prison with the defendant testified that the defendant told him on the night of the murder, he "was getting high on cocaine." The defense attorney attempted to impeach his credibility as he also testified that the defendant told him that he had stabbed the victim while attempting to rob him.

The Commonwealth's witness, Steven Keizer, testified that the defendant told him that Haggins "wanted to get high badder than [the defendant] did," that "they were going out to get some money to get high." This testimony does not indicate that the defendant was high on drugs, only that he wanted to get money to buy drugs. The defense counsel attempted to impeach the credibility of this witness as well.

On cross-examination of the defendant's housemate at the time of the stabbing, the defense attorney specifically elicited testimony that the defendant was not known to the witness as an individual who used drugs at all.

due to drug consumption. The instruction was more than the evidence required. There was no error.

2. *Felony-murder instruction*. The defendant claims that there was insufficient evidence that the motive for the stabbing was robbery, and thus the judge erred in instructing the jury on attempted armed robbery as the underlying felony for felony-murder.[2] The defendant also argues that, under the corroboration rule, there must be evidence in addition to the defendant's admissions of being motivated by an intent to rob and that such evidence was lacking. We conclude that there was sufficient evidence that the defendant stabbed the victim in the course of an attempt to rob him at knife point. The defendant admitted to one fellow inmate that he stabbed the victim in the course of an attempt to rob him. He admitted to another inmate that he went out that night to get money and wished he never encountered the victim.

Assuming that the corroboration rule applies in these circumstances,[3] all that the rule requires is that there be some evidence, other than a confession, that the criminal act was committed by someone, that is, that the crime was real and not imaginary. *Commonwealth* v. *Forde*, 392 Mass. 453, 458 (1984). "Thus, in a homicide case, the corroborating evidence need only tend to show that the alleged victim is dead." *Id.* In a felony-murder case there must be evidence of an underlying felony, not only evidence of a homicide. *Commonwealth* v. *Quigley*, 391 Mass. 461, 465 (1984), cert. denied, 471 U.S. 1115 (1985). It is not necessary that we discuss the application of the corroboration rule because some evidence exists in addition to the defendant's admissions that he stabbed the victim in the course of an attempted robbery.

The victim, who was unknown to the defendant, was stabbed after a chance encounter while he was walking home alone on Dorchester Avenue late at night. Witnesses to the attack testified that the defendant was the aggressor and the

[2]The defendant need not be indicted for a life felony to be convicted on a felony-murder theory. J.R. Nolan & B.R. Henry, Criminal Law § 181, at 36 (2d ed. 1988). The defendant was indicted, convicted, and sentenced on two charges: murder in the first degree and armed assault with intent to rob.

[3]Numerous States have held that an admission of a felony is sufficient corroboration for felony-murder. See, e.g., *Ballard* v. *State*, 333 Md. 567, 578 (1994); *State* v. *Martin*, 645 So. 2d 190, 196 (1994), cert. denied, 115 S. Ct. 2252 (1995); *Connecticut* v. *Oliveras*, 210 Conn. 751, 757 (1989); *Jones* v. *State*, 253 Ind. 235, 249 (1969), cert. denied, 431 U.S. 971 (1977).

victim was backing up and trying to defend himself. The defendant and his companion were either cruising the streets of Boston in search of a victim, as the evidence suggests, or were on some aimless and unidentified quest. These additional facts corroborate the defendant's separate admission that he intended to rob the victim on the night in question.

The jury were given correct instructions regarding the elements of attempted armed robbery and we presume that they followed them. *Commonwealth* v. *Leno*, 374 Mass. 716, 719 (1978).

We now turn to the issues argued on appeal that we review under a substantial likelihood of a miscarriage of justice standard.

3. *The testimony of Troy Nunes.* The defendant claims that the judge erred in allowing testimony of this witness because it was hearsay. As the defense attorney failed to object to this testimony, the standard of review is whether the testimony created a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Mello*, 420 Mass. 375, 380 (1995); *Commonwealth* v. *Marquetty*, 416 Mass. 445, 448 (1993).

Nunes testified both that he had read transcripts of previous proceedings of the defendant's case and that he and the defendant discussed the case while they were both incarcerated. The prosecutor specifically asked Nunes to repeat what the defendant had said to him about the incident. If Nunes's answers were responsive and relevant, then the testimony is admissible as an admission. P.J. Liacos, Massachusetts Evidence § 8.1, at 463 (6th ed. 1994).

The defendant argues, however, that Nunes did not respond to the questions asked, but rather repeated impermissible hearsay by stating what he had read instead of what he had been told. While being questioned by the Commonwealth concerning what the defendant said, Nunes responded at various times that he was confused and could not remember if things were said by the defendant or if he had read them in the transcripts.[4] At that point, the judge specifically instructed him to state only what he had heard and not to respond if he

---

[4] Q. "Do you recall talking to the police about this?"

A. "Yes; I do, but like I said before, I kept stressing the point to them that I don't know if I'm speaking from the transcripts or from memory of conversation."

was unsure. He indicated that he understood.[5] In addition, the judge cautioned the jury that Nunes's testimony was only admissible for what he heard the defendant say.[6] The jury are presumed to have followed instructions. *Commonwealth* v. *Leno*, 374 Mass. 716, 719 (1978).

There was no substantial likelihood of a miscarriage of justice.

4. *Malice instruction.* The defendant argues that the judge's instructions on malice were improper and might have caused the jury improperly to infer malice.[7] Since there was no objection to this instruction, we again review to determine whether

---

[5] THE JUDGE: "Okay. Now, when [the prosecutor] asks you questions, I want to make sure that you just don't simply regurgitate what you may have read. If he asks you a question about what somebody may have told you, then you can answer it, if you have a memory of what that person may have told you; but don't just simply repeat what you may read in a transcript. Do you understand that?"

THE WITNESS: "Yes, your Honor; but he's asking these questions, and he's asking them from the form that I had the interview with the police officers."

THE JUDGE: "Okay; well, I just — I don't want you mixing up what you may have read and what you have a good memory of somebody telling you. You can only tell us what somebody told you; all right?"

THE WITNESS: "That, I'm not sure, because I —"

THE JUDGE: "Well, then just tell him that, and he'll ask another question."

[6] The judge stated: "Let me just explain to the jury, because you may get confused when you're hearing evidence of an out of court conversation between two people. I want to make this distinction to you again that I think I made on a previous occasion. The witness may relate what he said in the course of this conversation. I'm admitting that only in that it may shed some light on what the defendant said. I'm not admitting what the witness said for the truth of whatever is contained in the witness' statement. I'm only admitting that so that you might understand what the defendant's response was. Your focus should be on what the defendant — what [the defendant] supposedly said in this conversation."

[7] The judge's instructions were as follows:

"Element number three, malice aforethought. The third element the Commonwealth must prove to you beyond a reasonable doubt is that the killing was committed with malice aforethought. Malice aforethought refers to a frame of mind which includes not only anger, hatred, and revenge, but also every other unlawful and unjustifiable motive.

a substantial likelihood of a miscarriage of justice was created. See *Commonwealth* v. *Eagles*, 419 Mass. 825, 834 (1995); *Commonwealth* v. *Burke*, 414 Mass. 252, 265 (1993).

The definition of malice aforethought, as set forth in *Commonwealth* v. *Grey*, 399 Mass. 469, 470 n.1 (1987), and its progeny, has three prongs: (1) specific intent to cause death; (2) specific intent to cause grievous bodily harm; and (3) in the circumstances known to the defendant, a reasonably prudent person would know that the defendant's act was very likely to cause death.

The defendant objects to the judge's instructions on malice aforethought as "a frame of mind which includes not only anger, hatred, and revenge, but also every other unlawful and unjustifiable motive." The defendant contends that the judge's use of the phrase "frame of mind" invited the jury improperly to infer malice. We have recently criticized a similar charge

"However, malice aforethought does not necessarily imply ill will toward the person killed. Any intentional killing of a human being without legal justification or excuse, with no extenuating circumstances sufficient in law to reduce the crime to manslaughter, is malicious within the meaning of malice aforethought.

"Whether a killing is actually committed with malice aforethought is determined from the nature and quality of the act which attends the killing. If the circumstances attending the killing disclose that death flows from a purposeful, selfish, wrongful motive, as distinguished from the frailty of human nature, then that would constitute malice aforethought.

"Malice aforethought includes an unexcused specific intent to kill, or an unexcused specific intent to do grievous bodily injury, or an unexcused intent to do an act creating a plain and strong likelihood that death or grievous bodily harm would follow. Malice aforethought may be inferred if *in the circumstances known to the defendant a reasonable, prudent person would have known* that according to common experience there was a plain and strong likelihood that death or grievous bodily harm would follow the contemplated act.

"Malice may be inferred, but does not have to be, from the intentional use of a dangerous weapon. A dangerous weapon is any instrument which by its construction or its use is capable of causing death or grievous bodily injury, or one which could be perceived by a reasonable person as being so capable. *You need not draw an inference of malice from the use of a dangerous weapon.* It is entirely up to you to decide whether to draw that inference.

"A specific intent, which is required here, is the act of concentrating or focusing the mind for some perceptible period. It is a conscious act, with the determination of the mind to do an act. It is contemplation rather than reflex, and that contemplation must precede the act."

stating: "The language is not helpful . . . because it may focus the jury on the need for proof of some special animosity that the defendant harbored toward the victim, when the relevant inquiry is the defendant's intent to kill or do grievous bodily harm, or the defendant's knowledge of circumstances which would indicate to a reasonably prudent person that the conduct in question would likely cause death; or because it may lead the jury to believe that anger, hatred, revenge or a selfish wrongful mood is enough to show malice." *Commonwealth* v. *Eagles, supra* at 836. Here, however, the judge's instruction to the jury, considered as a whole, adequately explained the concept of malice aforethought. See *Commonwealth* v. *Torres*, 420 Mass. 479, 486 (1995); *Commonwealth* v. *Eagles, supra*; *Commonwealth* v. *Ferreira*, 417 Mass. 592, 598 (1994).

The judge properly explained the first two prongs of malice to the jury. The judge instructed on the third prong that "[m]alice aforethought may be inferred if in the circumstances known to the defendant, a reasonable, prudent person would have known that according to common experience there was a plain and strong likelihood that death or grievous bodily harm would follow the contemplated act." The proper instruction would not have included grievous bodily harm in this third prong. See *Commonwealth* v. *Fuller*, 421 Mass. 400, 412 (1995). This does not, however, create a substantial likelihood of a miscarriage of justice in this case. The third prong of malice has application only when a charge of murder in the first degree is based on the theory of extreme atrocity or cruelty. *Commonwealth* v. *Judge*, 420 Mass. 433, 437 (1995). Thus, any error in the instructions on the third prong of malice is irrelevant to a conviction of murder in the first degree on theories of felony-murder and deliberate premeditation. *Id*. Thus, the instruction given adequately explained the necessary elements of malice in the circumstances of this case.

Furthermore, the record discloses that the evidence did not raise a serious question as to the presence of malice. *Commonwealth* v. *Eagles, supra* at 837. It cannot be seriously contended that stabbing someone in the abdomen with a knife having a six-inch blade was not done with the specific intent to cause death.

The defendant's argument that, because there was contra-

dictory evidence as to the defendant's motivation for the stabbing, the judge's instructions on malice aforethought should somehow be reviewed under a more favorable standard is unsupported by precedent or lucid analysis. The defendant refers to evidence that he took the knife from a man that came at him in a store. If by this reference he is attempting to raise the issue of self-defense, the effort fails. At trial the defense did not adopt this version of events, but rather attempted to impeach this witness. Furthermore, there was no request for an instruction on self-defense.

We review under G. L. c. 278, § 33E, to see whether the judge erred in failing to charge the jury, sua sponte, on the law of self-defense. "A defendant is entitled to have the jury at his trial instructed on the law relating to self-defense if the evidence, viewed in its light most favorable to him, is sufficient to raise the issue." *Commonwealth* v. *Blake*, 409 Mass. 146, 158 (1991), quoting *Commonwealth* v. *Harrington*, 379 Mass. 446, 450 (1980). The right of self-defense ordinarily cannot be claimed by a person who provokes or initiates an assault. *Commonwealth* v. *Maguire*, 375 Mass. 768, 772 (1978).

As discussed, the evidence supports and the jury found that the victim was stabbed in the course of armed robbery. An out-of-court statement attributed to the defendant asserting that he had been attacked was not acknowledged by the defendant and was uncorroborated by any of the other evidence presented. In these circumstances the defendant had no right to an instruction on self-defense. There is no merit to his claim that our review of the jury instruction on malice should be conducted under a more favorable standard.

5. *Jury unanimity*. The defendant's final argument is that it was error for the judge to fail to clarify that the jury were required to be unanimous as to the underlying theory as well as the degree of the murder.

We have stated that, as a matter of common law, when requested, a judge should give an instruction to the jury that they must agree unanimously on the theory of culpability where the defendant has been charged with murder in the first degree. *Commonwealth* v. *Berry*, 420 Mass. 95, 112 (1995). Here, the defendant neither requested such an instruction, nor did he request that the jury be polled after the general verdict of murder in the first degree was returned.

Of course this issue could have been avoided if the judge, either on his own or at the request of the prosecutor, had submitted special questions to the jury. *Commonwealth* v. *Blackwell, ante* 294 (1996). It is not necessary that we afford the defendant any relief in this case. The jury were instructed on both felony-murder and deliberate premeditation. The judge gave a unanimity instruction as to degree of murder and the jury returned a general verdict of guilty of murder in the first degree.[8] When it is impossible to discern which of the two grounds for conviction the jury selected in returning a verdict of guilty, in order to withstand appellate scrutiny the verdict must be supportable on both grounds. *Commonwealth* v. *Flynn*, 420 Mass. 810, 811-818 (1995).

As discussed above, there was sufficient evidence presented to the jury for a finding of guilty of murder in the first degree under a felony-murder theory. The defendant does not contest the sufficiency of the evidence for the premeditation theory. The jury could have found the defendant guilty under either theory presented to them. Where a verdict is supportable on both grounds, a general verdict of murder in the first degree is proper without a special finding of the particular manner in which it was committed. See *Commonwealth* v. *Berry, supra* at 111; *Commonwealth* v. *Sylvester*, 400 Mass. 334, 340 (1987). There was no error.

6. *General Laws c. 278, § 33E.* We have also reviewed the entire record and see no reasons for relief under G. L. c. 278, § 33E.

*Judgments affirmed.*

---

[8]The judge instructed: "The verdict slip that you will have with you will have four choices. Number one is not guilty. Number two is guilty of murder in the first degree. Number three is guilty of murder in the second degree; and number four is guilty of manslaughter. Obviously, you can only return one verdict on this indictment; you can only check off one of the four choices, and your verdict must be unanimous."